IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ADVANCED CLUSTER SYSTEMS, INC., | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-2032-CFC |
| | ) | |
| NVIDIA CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## [PROPOSED] E-DISCOVERY ORDER

Plaintiff Advanced Cluster Systems, Inc. ("Plaintiff") and Defendant NVIDIA Corporation ("Defendant") (collectively, the "Parties"), by and through their respective counsel, hereby stipulate and agree as follows with respect to this above-captioned lawsuit (the "Litigation"):

1. **General Provisions**

    a. This Stipulation is intended to supersede the Court's Default Standard for Discovery, Including Discovery of Electronically Stored Information ("ESI"). Nothing in this Stipulation is intended to waive any privileges or, except as specifically provided herein, to impose obligations different than those contained in the Federal Rules of Civil Procedure.

b. **Proportionality**.   Parties will use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information.[1]  This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery and other parameters to limit and guide preservation and discovery issues.  The Parties shall produce relevant, responsive, and non-privileged ESI within its possession, custody or control that is reasonably accessible and not unduly burdensome to locate and produce.

c. The term "Producing Party" means any Party who produces, discloses or generates documents including ESI in the Litigation. The term "Receiving Party" means any Party who receives the documents produced, disclosed or generated in the Litigation.

d. **Preservation of Discoverable Information**.

(i) A party shall take reasonable and proportional steps to preserve discoverable information in the party's possession, custody or control.

(ii)  Absent a showing of good cause by the Receiving Party, the parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided,

---

[1] Information can originate in any form, including ESI and paper, and is not limited to information created or stored electronically.

however, that the parties shall preserve the non-duplicative discoverable information currently in their possession, custody or control.

(iii)  Absent a showing of good cause by the requesting Party, the categories of ESI identified in Schedule A attached hereto need not be preserved or searched.

e.  **Privilege**.

(i)  The parties will confer on the nature, scope and timing of privilege logs for the case, including whether categories of information may be excluded from any logging requirements and whether alternatives to document-by-document logs can be exchanged.

(ii)  With respect to information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

(iii)  Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

(iv)  Parties shall confer on an appropriate non-waiver order under Fed. R. Evid. 502 and include this language in a Protective Order.  Until a non-waiver order is entered, information that contains privileged matter or attorney work product shall be immediately returned if such information appears on its face to have been

inadvertently produced or if notice is provided within 30 days of inadvertent production.

2. **Service and Delivery of Discovery and Documents**

    a. The Parties agree that discovery requests and responses shall be served on each other by email and that such email service will constitute effective service equivalent to hand delivery if directed to the designated email addresses:

| Party | Designated Email Addresses |
|---|---|
| Advanced Cluster Systems, Inc. | ACSService@knobbe.com; kkeller@shawkeller.com |
| NVIDIA Corporation | nvidia-acs-dla@dlapiper.com |

    b. The Parties further agree that only outside counsel for the Parties, as well as partners, associates, and employees of such counsel who are assigned to and reasonably necessary to assist such counsel in the Litigation will be included in the above email distribution addresses.

    c. The Parties will further use these designated email addresses for communication regarding the Litigation.

    d. A Producing Party may, at its election, serve documents via secure file transfer (e.g., over FTP) with password protection.

    e. In addition to the .PDF format, the Parties shall exchange copies of discovery requests in Microsoft Word format within a reasonable time.

f.  Documents that are filed with the Court shall be served on the other Parties as soon as practicable after filing.

3. **Disclosures of Discovery Sources**.  On August 17, 2020:

a. **Custodians**.  The parties shall cooperate to identify up to 8 custodians per party most likely to have discoverable information in their possession, custody or control, from the most likely to the least likely.  The custodians shall be identified by name, title, role in the instant dispute, and the subject matter of the information.  The Parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional or fewer custodians, upon showing a distinct need based on the size, complexity, and issues of this specific case.

b. **Non-custodial data sources**.[2]  Each party shall disclose a list of non-custodial data sources most likely to contain non-duplicative discoverable information for production consideration.

c. **Notice**.  The parties shall identify any issues relating to:

_____

[2] That is, a system or container that stores ESI, but over which an individual custodian does not organize, manage or maintain the ESI in the system or container (e.g., enterprise system or database).

(i)  Any ESI (by type, date, custodian, electronic system or other criteria) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(C)(i).

(ii)  Production of information subject to privacy protections, including information that may need to be produced from outside of the United States and subject to foreign laws.

d.  Absent a showing of good cause, follow-up discovery shall be limited to, a term of 6 years before the filing of the complaint, except that discovery related to asserted prior art or the conception and reduction to practice of the inventions claimed in any patent-in-suit shall not be so limited.

4.  **Specific E-Discovery Issues.**

a.  **On-site inspection of electronic media**.  Such an inspection shall not be permitted absent a demonstration by the Requesting Party of specific need and good cause.

b.  **Search methodology**.  Requests for Production shall apply to non-custodial data sources identified in accordance with paragraph 3(b) and ESI maintained by the custodians identified in accordance with paragraph 3(a).  If the Producing Party elects to use search terms to locate potentially responsive ESI, it shall disclose the search terms and proposed time frame to the Requesting Party.  Absent a showing of good cause, a Requesting Party may request no more than

7 additional terms to be used in connection with the electronic search, and the parties will meet and confer regarding these additional terms.

To obtain email, parties must propound specific email production requests. Email production requests shall only be propounded for specific issues, rather than general discovery of a product or business. Email production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms and proper timeframe. Each requesting party shall limit its email production requests to no more than eight custodians per producing party for all such requests. Each requesting party shall limit its email production requests to a total of seven search terms per custodian per party. The Parties may jointly agree to modify these limits without the Court's leave. The Court shall consider contested requests for additional or fewer search terms, upon showing a distinct need based on the size, complexity, and issues of this specific case. Cost-shifting may be considered as part of any such request. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system")

broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word or phrase. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery. No Party is obligated to produce email until the Parties have come to an agreement on custodians and search terms as outlined in this Order.

c. **Format**. The parties shall produce information in the following format: single page black and white Group IV TIFF images and associated multi-page text files with a standard delimited concordance format (DAT file) and Opticon (OPT file) format, including document breaks and page counts. The Producing Party may choose to produce in color, and the Receiving Party may request production in color in the event that production in color is reasonably necessary to understand the document and the Producing Party will exercise reasonable efforts to comply with such request. Documents originally produced in black and white and later reproduced in color in response to a request by the Receiving Party shall bear the same production number(s) as the originally produced document where practicable. A single multi-page document level text file shall be provided for each document, and the filename should match its respective TIFF image filename. A commercially-acceptable technology for optical character recognition ("OCR") shall be used for all scanned, hard copy

documents written in English or other Latin-character language. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents and OCR text files will be substituted instead of extracted text files for redacted documents.

d. **Native files**.  The only files that should be produced in native format are files not easily converted to image format, such as Excel and Access files. For documents that are produced as native files, the Producing Party shall endeavor to include in the set of TIFF images a slipsheet where the native file would otherwise have been produced indicating the production number of the native file or other document and the confidentiality designation. In addition, native files shall be produced using a name that bears the production number (*e.g.*, ABC000002.xls). The Producing Party shall endeavor to indicate any confidentiality designation in the produced filename where possible and reasonable.  A Producing Party shall respond to reasonable requests that spreadsheets and other documents produced in TIFF format that are unintelligible or not readily usable be produced in another format, such as native format.

e. The Parties shall produce e-mail attachments sequentially after the parent e-mail.

f. Productions that contain foreign language documents shall be Unicode compliant.

g. **Metadata fields**.  Absent a showing of good cause, ESI productions need not include metadata, except that the following fields shall be included in the production if such fields exist and are reasonably available to the Producing Party:

| Field Name | Field Description |
|---|---|
| BEGBATES | Number stamped on first image page of document |
| ENDBATES | Number stamped on last image page of document |
| BEGATTACH | Number stamped on first image page of attachment(s) |
| ENDATTACH | Number stamped on last image page of attachment(s) |
| CUSTODIAN | Where applicable and available, identifies the individual (custodian) from whom the document originated |
| DE-DUPED CUSTODIAN | Where applicable and available, identifies all individuals other than the individual identified in the CUSTODIAN field whose files were de-duplicated but contained a copy of the document |
| FILENAME | File name of an electronic document or attachment |
| NATIVEFILELINK | For documents produced as native file, link to that file |
| TEXTFILELINK | Link to text file produced with document or attachment |
| MD5HASH | Identifies value of an electronic record that can be used for deduplication and authentication generated using the MD5 hash algorithm |

Additionally, to the extent the Producing Party collects documents in a manner that preserves the below listed metadata fields, these fields shall be included in the production:

| Field Name |
| --- |
| DATECREATED |
| TIMECREATED |
| DATELASTMODIFIED |
| TIMELASTMODIFIED |
| FILE PATH |
| AUTHOR |
| FILE EXTENSION |
| FILESIZE |

Documents saved or created for the purpose of litigation (e.g., publicly available prior art, summary financial spreadsheets, etc.) need not include these fields.

Additionally, the following fields shall be included in the production of any emails if such fields exist and are reasonably available to the Producing Party:

| Field Name |
| --- |
| EMAIL SUBJECT |
| FROM |
| TO |
| CC |
| BCC |
| DATE SENT |
| TIME SENT |
| DATE RECEIVED |
| TIME RECEIVED |
| DATE CREATED |
| DATE MODIFIED |
| ATTACHMENTID |

| Field Name |
| --- |
| CONVERSATION INDEX |
| GROUP IDENTIFIER |
| PARENTID |

h.  The Parties are not required to preserve metadata fields that are frequently updated in the ordinary course of business, such as last-opened dates.

i.  To facilitate production of ESI, a Producing Party may batch designate ESI produced pursuant to this agreement according to appropriate confidentiality designations under the Protective Order without justifying the confidentiality of the ESI on a document-by-document basis at the time of production. In the event that a Receiving Party challenges the confidentiality designation of any document, the Parties will follow the process set forth in the Protective Order for resolving such disputes.

5.  **Discovery of Expert Materials**

a.  The Parties agree to be bound by Federal Rule of Civil Procedure 26(b)(4) as to discovery of expert materials.

b.  The Parties agree that no conversations or communications between or including any Party or its counsel and any testifying or non-testifying expert, or between or including any testifying expert and any non-testifying expert, including emails, written agreements, or correspondence, and notes or outlines pertaining thereto, whether drafted or occurring in connection with the Litigation or any prior or pending investigation, litigation, or proceeding (including *inter*

*partes* review or reexamination proceedings before the USPTO), will be subject to discovery or examination at any deposition, hearing, or trial unless the conversations or communications are relied upon by a testifying expert in formulating his or her final report or any opinion in the Litigation.

    c. The Parties agree that all materials generated by any testifying expert are exempt from discovery, whether generated in connection with this Litigation or any prior or pending investigation, litigation, or proceeding (including *inter partes* review or reexamination proceedings before the USPTO) unless relied upon by a testifying expert in formulating his or her final report or any opinion in the Litigation. Testifying experts shall not be subject to discovery or examination at any deposition, hearing, or trial on any draft of their expert reports, declarations, and affidavits, nor notes or outlines pertaining thereto, whether drafted in connection with the Litigation or any prior or pending investigation, litigation, or proceeding (including *inter partes* review or reexamination proceedings before the USPTO).

    d. The Parties agree that discovery of materials provided to testifying experts, whether provided in connection with the Litigation or any prior or pending investigation, litigation, or proceeding (including *inter partes* review or reexamination proceedings before the USPTO), shall be limited to those materials, facts, non-testifying expert opinions, and other matters actually relied

upon by the testifying expert in forming his or her final report or any opinion in the Litigation.

e.  Notwithstanding the above, the Parties shall identify the facts or data considered by the expert, and produce any documents relied upon by the expert, in forming the opinions set forth in his or her report, declaration, affidavit, and/or testimony.  Furthermore, nothing in this agreement is intended to restrict discovery relating to: (a) the compensation paid to an expert; and (b) any communications with counsel to the extent relied upon by, the expert.

f.  Non-testifying experts shall not be subject to discovery, except to the extent a testifying expert is relying on the work or opinions of a non-testifying expert in formulating his or her final report or any opinion in the Litigation. Where a testifying expert is relying on the work or opinions of a non-testifying expert, discovery can be taken from the non-testifying expert with the same limitations that apply to testifying experts, but discovery shall be limited to the information provided to the testifying expert that the testifying expert is relying on in formulating his or her final report or any opinion in the Litigation and the basis for such information.  To the extent a Party has a good-faith basis to subpoena a non-testifying expert in his or her personal capacity to obtain information that is not based on work performed in conjunction with the Litigation (*e.g.*, to the extent such an expert is believed to be a source or custodian

of prior art), the Parties agree to meet and confer prior to any application for said subpoena.

6. **Documents Received In Response to a Subpoena**

   a. Any Party who receives documents from a third party pursuant to a subpoena shall re-produce those documents to the other Parties within 3 business days. The Parties agree that they shall make reasonable efforts to re-produce such third-Party materials in fewer than 3 business days when necessary, such as, for example, in the event such documents may be used in a deposition. Where re-production of the documents within 3 business days is not feasible, the Party who received the documents shall provide prompt notice to the other Parties and the issue will be resolved on a case-by-case basis.

7. **Non-Confidential Versions of Certain Documents**

   a. Counsel for a Party may request permission to provide a redacted version of a confidential submission from another Party to individuals outside the protective order. The other Parties shall endeavor to respond in a reasonably timely fashion to such requests.

8. **Verifications**

   The Parties will meet and confer regarding the timing of service of verifications of interrogatory responses.  Absent an agreement regarding timing of service, no later than 30 days prior to close of fact discovery the parties will serve

verifications to interrogatory responses served to date.   The parties will serve verifications of any later served interrogatory responses on the same day the responses are served.

9.  **Modification of This Stipulation**

This stipulation may be modified by order of the Court or by the Parties' written agreement.

Date: March 27, 2020

| | |
|---|---|
| */s/ Karen E. Keller* | */s/ Denise S. Kraft* |
| Karen E. Keller (No. 4489) | Denise S. Kraft (DE Bar No. 2778) |
| SHAW KELLER LLP | Brian A. Biggs (DE Bar No. 5591) |
| I.M. Pei Building | Erin E. Larson (DE Bar No. 6616) |
| 1105 N. Market Street, 12th Floor | DLA PIPER LLP (US) |
| Wilmington, DE 19801 | 1201 North Market Street, Suite 2100 |
| (302) 298-0700 | Wilmington, DE 19801-1147 |
| kkeller@shawkeller.com | denise.kraft@dlapiper.com |
| | brian.biggs@dlapiper.com |
| | erin.larson@dlapiper.com |
| Jon W. Gurka (*Pro Hac Vice*) | |
| Brian Claassen (*Pro Hac Vice*) | |
| Cheryl Burgess (*Pro Hac Vice*) | Mark Fowler (*Pro Hac Vice*) |
| James F. Smith (*Pro Hac Vice*) | Clayton Thompson (*Pro Hac Vice*) |
| KNOBBE, MARTENS, OLSON & BEAR, | Jake Zolotorev (*Pro Hac Vice*) |
| LLP | Carrie Williamson (*Pro Hac Vice*) |
| 2040 Main Street, 14th Floor | Asa Wynn-Grant (*Pro Hac Vice*) |
| Irvine, CA 92614 | DLA PIPER LLP (US) |
| (949) 760 0404 | 2000 University Avenue |
| jon.gurka@knobbe.com | East Palo Alto, CA 94303-2214 |
| brian.claassen @knobbe.com | mark.fowler@dlapiper.com |
| cheryl.burgess @knobbe.com | clayton.thompson@dlapiper.com |
| james.smith@knobbe.com | jake.zolotorev@dlapiper.com |
| | carrie.williamson@dlapiper.com |
| | asa.wynn-grant@dlapiper.com |
| *Attorneys for Plaintiff* | |
| *Advanced Cluster Systems, Inc.* | |

*Attorneys for Defendant*
*NVDIA Corporation*

**SO ORDERED** this _____ day of _____, 2020

_____
Honorable Colm F. Connolly
United States District Court Judge

## SCHEDULE A

1.     Deleted, slack, fragmented, or other data only accessible by forensics.

2.     Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3.     On-line access data such as temporary Internet files, history, cache, cookies, and the like.

4.     Data in metadata fields that are frequently updated automatically, such as last-opened dates.

5.     Back-up data that are substantially duplicative of data that are more accessible elsewhere.

6.     Voice and text messages and mobile devices.

7.     Instant messages that are not ordinarily printed or maintained in a server dedicated to instant messaging.

8.     Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

9.     Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

10.    Logs of calls made from mobile devices.

11.    Server, system or network logs.

12. Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

13. Data remaining from systems no longer in use that is unintelligible on the systems in use.

14. Social media or web based communications.