# EXHIBIT 3

# UNITED STATES DISTRICT COURT
for the
District of Delaware

| | |
|---|---|
| ADVANCED CLUSTER SYSTEMS, INC., <br> *Plaintiff* <br> v. <br> NVIDIA CORPORATION, NVIDIA SINGAPORE PTE. LTD., AND NVIDIA INTERNATIONAL, INC., <br> *Defendant* | Civil Action No. C.A. No. 1:19-cv-02032-MN-CJB |

**SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION**

To: KNOBBE, MARTENS, OLSON & BEAR, LLP
c/o Cheryl Burgess, 2040 Main Street, 14th Floor, Irvine, CA 92614, (949) 760-0404

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment: See Attachment A

| Place: DLA Piper LLP (US), 550 South Hope Street, #2400, Los Angeles, CA 90071-2618, (213) 330-7700 | Date and Time: July 28, 2022, 9 a.m. PT |
|---|---|

The deposition will be recorded by this method: Stenographic and/or video

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: July 6, 2022

| *CLERK OF COURT* | |
|---|---|
| | OR |
| _____ <br> *Signature of Clerk or Deputy Clerk* | /s/ Brian A. Biggs <br> *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Defendants, NVIDIA CORPORATION, et al. , who issues or requests this subpoena, are:
Brian A. Biggs, DLA Piper LLP (US), 1201 North Market Street, Suite 2100, Wilmington, DE 19810, brian.biggs@us.dlapiper.com, (302) 468-5700

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No.  C.A. No. 1:19-cv-02032-MN-CJB

# PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* __KNOBBE, MARTENS, OLSON & BEAR, LLP__
on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ __0.00__ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*

   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**ATTACHMENT A**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ADVANCED CLUSTER SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> NVIDIA CORPORATION, NVIDIA SINGAPORE PTE. LTD, AND NVIDIA INTERNATIONAL, INC. <br><br> Defendant. | Civil Action No. 1:19-cv-02032-MN-CJB |

**DEFENDANT NVIDIA CORPORATION, NVIDIA SINGAPORE PTE. LTD, AND NVIDIA INTERNATIONAL, INC.'S SUBPOENA *AD TESTIFICANDUM* TO KNOBBE MARTENS OLSON & BEAR LLP**

Pursuant to Federal Rule of Civil Procedure 45:

**YOU ARE HEREBY ORDERED** to present yourself for purposes of your deposition upon oral examination on July 28, 2022 at 9 a.m. PT, at the offices of DLA Piper, LLP (US), 550 South Hope Street, Suite 2400, Los Angeles, CA 90071-2618, (213) 330-7700, or at any other location and date mutually agreed upon, concerning the subject matter set forth below. The following definitions apply.

**DEFINITIONS**

1.  "You" or "Your" means you, Knobbe Martens Olson & Bear LLP, including, without limitation, any of your agents, representatives, and attorneys, and any others persons acting or purporting to act on your behalf.

2.  The terms "Plaintiff" and "ACS" shall mean and include Advanced Cluster Systems, Inc., including, without limitation, all predecessors, successors, subsidiaries, divisions,

1

parents and/or affiliates thereof, past or present, and all past or present officers or employees, including directors, agents, employees, inventors, researchers, scientists, consultants, accountants, attorneys, representatives, and any other person or entity acting on behalf of any of the foregoing.

3. "NVIDIA" mean and includes NVIDIA Corporation, NVIDIA Singapore Pte. Ltd., and NVIDIA International, Inc., including, without limitation, all predecessors, successors, subsidiaries, divisions, parents and/or affiliates thereof, past or present, and all past or present officers or employees, including directors, agents, employees, inventors, researchers, scientists, consultants, accountants, attorneys, representatives, and any other person or entity acting on behalf of any of the foregoing.

4. As used herein, "Action," "Litigation," and "Case" refer to the above-captioned lawsuit filed on or about October 28, 2019, in the United States District Court for the District of Delaware, and any allegations, claims, and defenses therein.

5. As used herein, "Complaint" refers to Plaintiff's First Amended Complaint for Patent Infringement filed in this Action on or about June 28, 2021, and any amendments thereto.

6. The term "'768 patent" or "Asserted Patent" shall mean U.S. Patent No. 10,333,768, entitled "Cluster Computing," issued on June 25, 2019, as well as any reexamination or reissue certificate(s) issuing from the foregoing, any patent applications leading directly or indirectly to the foregoing (including without limitation all published and unpublished pending and abandoned applications, and all applications on which any claim of priority is based), and any application and/or patent related therefrom filed or issued outside of the United States.

7. The term "'924 Patent" shall mean U.S. Patent No. 7,136,924, as well as any reexamination or reissue certificate(s) issuing from the foregoing, any patent applications leading directly or indirectly to the foregoing (including without limitation all published and unpublished

pending and abandoned applications, and all applications on which any claim of priority is based), and any application and/or patent related therefrom filed or issued outside of the United States.

**8.** The term "'193 Patent" shall mean U.S. Patent No. 7,472,193, as well as any reexamination or reissue certificate(s) issuing from the foregoing, any patent applications leading directly or indirectly to the foregoing (including without limitation all published and unpublished pending and abandoned applications, and all applications on which any claim of priority is based), and any application and/or patent related therefrom filed or issued outside of the United States.

**9.** The term "'289 Patent" shall mean U.S. Patent No. 8,082,289, as well as any reexamination or reissue certificate(s) issuing from the foregoing, any patent applications leading directly or indirectly to the foregoing (including without limitation all published and unpublished pending and abandoned applications, and all applications on which any claim of priority is based), and any application and/or patent related therefrom filed or issued outside of the United States.

**10.** The term "'612 Patent" shall mean U.S. Patent No. 8,140,612, as well as any reexamination or reissue certificate(s) issuing from the foregoing, any patent applications leading directly or indirectly to the foregoing (including without limitation all published and unpublished pending and abandoned applications, and all applications on which any claim of priority is based), and any application and/or patent related therefrom filed or issued outside of the United States.

**11.** The term "'080 Patent" shall mean U.S. Patent No. 8,402,080, as well as any reexamination or reissue certificate(s) issuing from the foregoing, any patent applications leading directly or indirectly to the foregoing (including without limitation all published and unpublished pending and abandoned applications, and all applications on which any claim of priority is based), and any application and/or patent related therefrom filed or issued outside of the United States.

12. The term "'083 Patent" shall mean U.S. Patent No. 8,402,083, as well as any reexamination or reissue certificate(s) issuing from the foregoing, any patent applications leading directly or indirectly to the foregoing (including without limitation all published and unpublished pending and abandoned applications, and all applications on which any claim of priority is based), and any application and/or patent related therefrom filed or issued outside of the United States.

13. The term "'889 Patent" shall mean U.S. Patent No. 8,849,889, as well as any reexamination or reissue certificate(s) issuing from the foregoing, any patent applications leading directly or indirectly to the foregoing (including without limitation all published and unpublished pending and abandoned applications, and all applications on which any claim of priority is based), and any application and/or patent related therefrom filed or issued outside of the United States.

14. The term "'877 Patent" shall mean U.S. Patent No. 8,676,877, as well as any reexamination or reissue certificate(s) issuing from the foregoing, any patent applications leading directly or indirectly to the foregoing (including without limitation all published and unpublished pending and abandoned applications, and all applications on which any claim of priority is based), and any application and/or patent related therefrom filed or issued outside of the United States.

15. The term "EP'543 Patent" shall mean European Patent No. 2,027,543, as well as any reexamination or reissue certificate(s) issuing from the foregoing, any patent applications leading directly or indirectly to the foregoing (including without limitation all published and unpublished pending and abandoned applications, and all applications on which any claim of priority is based), and any application and/or patent related therefrom filed or issued outside of the United States.

16. The term "EP'414 Patent" shall mean European Patent No. 3,379,414, as well as any reexamination or reissue certificate(s) issuing from the foregoing, any patent applications

leading directly or indirectly to the foregoing (including without limitation all published and unpublished pending and abandoned applications, and all applications on which any claim of priority is based), and any application and/or patent related therefrom filed or issued outside of the United States.

17. The term "'442 Prov. Patent App." shall mean U.S. Provisional Patent Application No. 60/720,442, as well as any patent applications leading directly or indirectly to the foregoing (including without limitation all published and unpublished pending and abandoned applications, and all applications on which any claim of priority is based), and any application and/or patent related therefrom filed or issued outside of the United States.

18. The term "'738 Prov. Patent App." shall mean U.S. Provisional Patent Application No. 60/813,738, as well as any patent applications leading directly or indirectly to the foregoing (including without limitation all published and unpublished pending and abandoned applications, and all applications on which any claim of priority is based), and any application and/or patent related therefrom filed or issued outside of the United States.

19. The term "'908 Prov. Patent App." shall mean U.S. Provisional Patent Application No. 60/850,908, as well as any patent applications leading directly or indirectly to the foregoing (including without limitation all published and unpublished pending and abandoned applications, and all applications on which any claim of priority is based), and any application and/or patent related therefrom filed or issued outside of the United States.

20. The term "WO'445 Patent App." shall mean International Patent Publication No. WO2007/038445, as well as any patent applications leading directly or indirectly to the foregoing (including without limitation all published and unpublished pending and abandoned applications,

and all applications on which any claim of priority is based), and any application and/or patent related therefrom filed or issued outside of the United States.

21. The term "EP'727 Patent Pub." shall mean European Patent Publication No. 1,497,727, as well as any reexamination or reissue certificate(s) issuing from the foregoing, any patent applications leading directly or indirectly to the foregoing (including without limitation all published and unpublished pending and abandoned applications, and all applications on which any claim of priority is based), and any application and/or patent related therefrom filed or issued outside of the United States.

22. "MGT Patents" shall mean and include the '442 Prov. Patent App., WO'445 Patent App, '080 Patent, and '889 Patent.

23. "USPTO" shall mean the United States Patent and Trademark Office.

24. "Document" shall encompass the meaning and scope of that term as used in Federal Rule of Civil Procedure 34, and includes the terms "writings and recordings," "photographs," "originals," and "duplicate" as defined in Federal Rule of Evidence 1001, and is used in its customarily broad sense to include, without limitation, the following items, whether printed, recorded, stored or saved electronically, microfilmed, or reproduced by any process, or written or produced by hand, and whether or not claimed to be privileged or confidential or personal: letters; memoranda; reports; records; agreements; working papers; communications (including intradepartmental and interdepartmental communications); correspondence; summaries or records of personal conversations; diaries; forecasts; statistical statements; graphs; laboratory or research reports and notebooks; charts; minutes or records of conferences; expressions or statements of policy; lists of persons attending meetings or conferences; reports of or summaries of interviews; reports of or summaries of investigations; opinions or reports of consultants; patent appraisals;

opinions of counsel; reports of or summaries of either negotiations within or without the corporation or preparations for such; brochures; manuals; pamphlets; advertisements; circulars; press releases; drafts of any documents; memoranda; books; instruments; accounts; bills of sale; invoices; tapes; electronic communications, including but not limited to emails; telegraphic communications and all other material of any tangible medium of expression; and original or preliminary notes. Any comment or notation appearing on any document, and not a part of the original text, is to be considered a separate "Document."

**25.** The term "Source Code" shall mean any set of instructions, directives, commands, abstractions, expressions, or representations capable of being interpreted, compiled, or executed by a computer. It shall include but is not limited to any of the foregoing written in any of the following:

**a.** Command line interface languages including but not limited to DOS batch language, .bat (Windows batch file language), and shell scripting languages (for any Unix or Linux shell including but not limited to bash, ksh, csh, and zsh);

**b.** Compiled languages including but not limited to C, C++, Objective-C, COBOL, Delphi, Eiffel, Fortran, Java, Python, PHP, Visual Basic, and any language targeting a .NET CLR compiler (including but not limited to VB.NET and C#);

**c.** Interpreted and scripting languages including but not limited to Perl, Ruby, VBScript, and JavaScript;

**d.** Data and query languages including but not limited to Structured Query Language and all derivatives, variants, and dialects, whether standard or vendor-specific; and

  **e.**  Markup languages including but not limited to HTML, XML (including all derivatives, whether standard or custom, including but not limited to XHTML, XSL, XSLT, XPath, and XQuery).

  26. "Communication" means and refers to any transmission of information, in any form, via any medium, including, without limitation, documents incorporating, summarizing or describing the contents of the transmission, meetings and discussions, telephone conversations, electronic communications, telegraphic communications, or any document containing a recording, transcription, summary or description or identifying the time, place, subject matter, medium of transmission and/or participants in the transmission.

  27. "Patent" includes all U.S. patents and all foreign protection for intellectual property rights whether called a "Patent" or not.

  28. "Patented Technology" means any alleged invention that is disclosed, described, or claimed in any of the Patents-in-Suit.

  29. "Application" and "Applications" mean any and all patent applications that led to the issuance of the Patents-in-Suit, any continuations, continuations-in-part, divisionals, re-examinations, reissues, parents, foreign counterpart applications, and any other applications disclosing, describing, or claiming any alleged invention disclosed, described, or claimed in the Patents-in-Suit, whether or not abandoned and whether or not issued, or any application for a Patent or any Patent claiming priority to the filing date of any of the Patents-in-Suit.

  30. "Prior Art" shall mean all documents, information, or acts that qualify as prior art under any section or subsection of 35 U.S.C. §§ 102 and 103, including without limitation printed patents, printed publications, posters, PowerPoint presentations, products, systems, prior

inventions, on-sale bars, and any use, sale, or offer for sale before the actual filing date of the application that directly resulted in any Asserted Patent.

31.  "Related Litigation" means all litigation or other legal proceedings, including Patent and Trademark Office reexamination or reissue proceedings, in which anyone has asserted any claims or contentions Relating To the validity, enforceability or Infringement of the Patents-in-Suit, Related Patent or Applications.

32.  "Related Patent" or "Related Patents" shall include, whether or not abandoned and whether or not issued: (a) any patent or patent application that claims priority to the Asserted Patent; (b) any patent or patent application that claims priority from any patent or patent application on which the Asserted Patent claims priority; (c) any patent or patent application on which the Asserted patent depends for priority; (d) any patent or patent application identified in the related U.S. Application for the Asserted Patent; (e) any patent or patent application that claims priority from any patent or patent application identified in the related U.S. Application for the Asserted Patent; (f) any reissue, reexamination, or inter partes review of any of the aforementioned patents or patent applications; and (g) any foreign counterpart patent or foreign counterpart application of any of the aforementioned patents or patent applications (a foreign counterpart patent and foreign counterpart application shall include any foreign patent or foreign patent application in which a claim for priority has been made in either a U.S. application or a foreign application based on the other, or that the disclosures of the U.S. and foreign patent applications are substantively identical).

33.  "Entity" or "entities" means any legal person, corporation, company, partnership, sole proprietorship, firm, board, joint venture, association, organization, trust, governmental body,

9

agency, authority, commission, or any other juristic person, business unit, or collective organization, and any legal, governmental, organizational, or political subdivision thereof.

34.     "Person" or "persons" means any natural person, individual, group, or entity, including without limitation, partnerships, associations, groups, organizations, joint ventures, corporations, government agencies (federal, state, or local), and any other business or legal entities. The acts of a person shall include the acts of the person's directors, officers, owners, members, employees, agents, attorneys, and all other representatives acting on the person's behalf.

35.     "Relating to," "related to," or "relate to," when referring to any given subject matter, means without limitation any information, document, or thing that in whole or in part and directly or indirectly relates to, concerns, regards, discusses, describes, depicts, demonstrates, shows, evidences, supports, refutes, contradicts, summarizes, analyzes, bears upon, comments upon, pertains to, constitutes, comprises, involves, contains, embodies, reflects, alludes to, identifies, states, mentions, refers to, deals with, or is in any way relevant to the particular subject matter identified.

36.     "Including" shall mean "including without limitation" and "including but not limited to."

37.     "And," "or," and "and/or" shall be construed conjunctively or disjunctively, whichever maximizes the scope of each request in which they are used.

38.     "Any" means "all" and/or "each" and vice versa, as necessary to bring within the scope of the request all information that might otherwise be construed to be outside the scope.

39.     "Each" and "every" shall be construed to mean "each and every."

40.     Any pronoun shall be construed to refer to the masculine, feminine, or gender neutral as in each case is most appropriate.

41. The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

42. The use of the singular form of any word includes the plural and vice versa.

43. "MGT" shall mean and include "Math Grid Toolkit."

44. "SEM" shall mean and include "Supercomputing Engine for Mathematica."

45. "SET" shall mean and include "Supercomputing Engine Technology."

## TOPICS

**TOPIC NO. 1:**

Your Document retention policy or practice, including Your procedures and facilities for generating, maintaining, and disposing of records, including policies and practices Regarding patent application files.

**TOPIC NO. 2:**

The prosecution of the Asserted Patent and any Related Patent.

**TOPIC NO. 3:**

The prosecution of the MGT Patents.

**TOPIC NO. 4:**

Documents or Things created, authored, collected, contributed to, or received by the alleged inventors of the Asserted Patent, including any inventor notebooks, invention disclosures, articles, books, publications, notebooks, products or notes.

**TOPIC NO. 5:**

The inventorship and alleged conception and reduction to practice of each claim of the Asserted Patent.

**TOPIC NO. 6:**

The inventorship and alleged conception and reduction to practice of each claim of the '877 Patent.

**TOPIC NO. 7:**

All non-privileged Communications with any third party Related to the Asserted Patent.

**TOPIC NO. 8:**

Documents, things, Communications, analyses or studies Related to any secondary consideration of nonobviousness of the Asserted Patent or any Related Patent.

Any disputes, determinations, agreements, or investigations Related to the inventorship of the Asserted Patent, including any communications Related to the same.

**TOPIC NO. 9:**

Prior Art known to You related to the Asserted Patent and any Related Patent, including the date when You first learned of such Prior Art.

**TOPIC NO. 10:**

Practices or policies regarding prosecution of patents by You at or around the time of the prosecution of the Asserted Patent or any Related Patent.

**TOPIC NO. 11:**

Your knowledge of cluster computing systems with a peer-to-peer architecture.

**TOPIC NO. 12:**

Your knowledge of FFTW, including any Documents or things describing FFTW and when you acquired such knowledge, Documents or things.

**TOPIC NO. 13:**

Any assessment by You of the value, strength or benefit (financial, technical or otherwise) provided by the Asserted Patent or any Related Patent.