# EXHIBIT E

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ADVANCED CLUSTER SYSTEMS, INC., | CASE NO. 1:19-cv-2032-CFC |
| Plaintiff, | |
| v. | |
| NVIDIA CORPORATION, | |
| Defendant. | |

**DEFENDANT NVIDIA CORPORATION'S**
**SUPPLEMENTAL INVALIDITY CONTENTIONS**

I.      INTRODUCTION ..................................................................................................3

II.     SUPPLEMENTAL INVALIDITY CONTENTIONS PURSUANT TO
        PARAGRAPH 7(C) ..............................................................................................8

III.    U.S. PATENT NO. 10,333,768 ..........................................................................14

        A.      Identification of Prior Art ........................................................................14

        B.      Anticipation..............................................................................................31

        C.      Obviousness .............................................................................................33

        D.      State of the Art of the '768 Patent ..........................................................34

        E.      Obviousness of the Asserted Claims........................................................36

                1.      Level of Ordinary Skill in the Art................................................36

                2.      Obviousness In View of Known Technology ...............................36

                        a.      Peer-to-Peer Communications in Computer Clusters........40

                        b.      Kernels ...........................................................................57

                        c.      Claimed Sequence of Three Node Operations..................62

                        d.      *Fourier* Transforms and Other Computational Libraries...81

                        e.      Special Purpose and Multicore Processors .......................89

                3.      Obviousness in View of Admitted Prior Art and Infringement
                        Allegations ...................................................................................94

        F.      Secondary Considerations of Non-Obviousness.......................................95

        G.      Priority Date and Lack of Written Description.........................................101

                1.      May 4, 2007 filing date..............................................................102

                2.      February 14, 2014 filing date.......................................................106

        H.      Invalidity under § 112.............................................................................107

                1.      Legal Standard ...........................................................................107

                2.      The asserted claims are invalid for lack of written description and
                        for impermissibly adding new matter due to amendments made
                        during prosecution. ....................................................................107

                3.      The asserted claims are invalid for insufficient written description
                        and non-enablement. ...................................................................125

                4.      Indefiniteness .............................................................................140

DEFENDANTS' INVALIDITY DISCLOSURES
ACS 2017 LLC V.: BITMOVIN, INC.; BRIGHTCOVE, INC., ET AL.; TELESTREAM LLC; VUDU, INC.
C.A. Nos.: 19-cv-00179; 19-cv-00180; 19-cv-00182; 19-cv-00183

    5.    Lack of Inventorship ...................................................................141

    I.    Invalidity under § 101 .............................................................144

IV.    DOCUMENT PRODUCTION ACCOMPANYING SUPPLEMENTAL
       INVALIDITY CONTENTIONS ...........................................................147

    A.    Paragraph 8(a) of Scheduling Order ("A copy or sample of the prior art
          identified . . . that does not appear in the file history of the patent(s) at
          issue") ................................................................................147

    B.    Paragraph 8(b) of Scheduling Order ("All agreements that the party
          opposing infringement contends are comparable to a license that would
          result from a hypothetical reasonable royalty negotiation")....................147

    C.    Paragraph 8(c) of Scheduling Order ("Documents sufficient to show the
          sales, revenue, cost, and profits for Accused Instrumentalities identified
          pursuant to paragraph 3(b) of this Order for any period of alleged
          infringement").......................................................................148

    D.    Paragraph 8(d) of Scheduling Order ("All agreements that may be used to
          support the damages case of the party that is denying infringement.")...148

DEFENDANT NVIDIA'S SUPPLEMENTAL INVALIDITY DISCLOSURES
ADVANCED CLUSTER SYSTEMS, INC. V. NVIDIA CORPORATION
CASE NO. 1:19-CV-2032-CFC

limitation is not supported by written description or enabled.  Claim 39 recites "wherein the

hardware processor comprises a special purpose microprocessor." This limitation is not

supported by written description, which does not disclose any multi-core processor (as required

by independent claim 35) that is a special purpose microprocessor, and is not enabled.

### 4.  Indefiniteness

Under 35 U.S.C. § 112, a "patent is invalid for indefiniteness if its claims, read in light of

the specification delineating the patent, and the prosecution history, fail to inform, with

reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v.*

*Biosig Instruments*, *Inc*., 134 S. Ct. 2120, 2124 (2014).  At least the following elements of the

asserted '768 patent claims are indefinite, because they fail to inform a person of ordinary skill in

the art about the scope of the invention with reasonable certainty.

Claim 35 is indefinite for at least the reason that the limitation "communicate a result of

the second mathematical expression evaluation to the first node" lacks antecedent basis, and fails

to inform a POSITA with reasonable certainty about the scope of the invention.

Claim 25 is indefinite for at least the reason that the limitation "the plurality of nodes are

configured to communicate with one another to interpret and translate commands" fails to inform

a POSITA with reasonable certainty about the scope of the invention.

Furthermore, each asserted claim is indefinite under pre-AIA 35 U.S.C. Section 112,

second paragraph, because the claims recite both an apparatus and a method for using that

apparatus.  A claim does not meet the requirements of this statute, and is therefore invalid for

indefiniteness, when it "recit[es] both an apparatus and a method of using that apparatus." *IPXL*

*Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005).  Here, all of the

claims recite an apparatus and also one or more configurations or steps that will not occur until

the apparatus is used in a specific way.

NVIDIA expressly reserves the right to amend its supplemental contentions and pursue invalidity based on additional basis for indefiniteness as the case proceeds and after claim construction occurs, or in view of positions taken by ACS regarding invalidity or infringement.

### 5. Lack of Inventorship

Under 35 U.S.C. § 102(f), a person shall be entitled to a patent unless "he did not himself invent the subject matter sought to be patented." *In re VerHoef,* 888 F.3d 1362, 1365 (Fed. Cir. 2018). Those who "invent" patentable subject matter are entitled to a patent, 35 U.S.C. § 101, and when "an invention is made by two or more persons jointly, they shall apply for patent jointly," 35 U.S.C. § 116. The "[i]nventors may apply for a patent jointly even though (1) they did not physically work together or at the same time, (2) each did not make the same type or amount of contribution, or (3) each did not make a contribution to the subject matter of every claim of the patent." *Id.*



*Compare NVIDIA Corp. v. Advanced Cluster Sys., Inc.*, IPR2021-00020-2030, at ¶ 22 ("Mr. Tannenbaum and I realized certain limitations of the MGT product due to the underlying gridMathematica program.") *with*



on or about October 11, 2006, alleged inventors Dauger and Tannenbaum, through counsel, submitted a provisional application Attorney Docket No. ZTANN.002PR for "PoochMPI Toolkit for Mathematica." In this provisional application, the alleged inventors stated that "Our idea was to combine this tool [Mathematica] with the easy-to-use cluster computing solution embodied by Pooch and MacMPI." Second Provisional at 1.

With regard to Microsoft Windows Compute Cluster Server 2003 ("CCS"), CCS is designed to allow cluster initialization and communication between nodes while performing any desired task, including performing mathematical calculations, and supported gridMathematica.

DEFENDANT NVIDIA'S SUPPLEMENTAL INVALIDITY DISCLOSURES
ADVANCED CLUSTER SYSTEMS, INC. V. NVIDIA CORPORATION
CASE NO. 1:19-CV-2032-CFC

Press Release, *Wolfram Research Offers Support for Microsoft Windows Compute Cluster Server 2003*, WOLFRAM (June 9, 2006), https://announcements.wolfram.com/2006/wolfram-research-offers-support-for-microsoft-windows-compute-cluster-server-2003/.

CCS was publicly available at least as of June 9, 2006, the date it was officially released. *See* Press Release, *Microsoft Releases Windows Compute Cluster Server 2003, Bringing High-Performance Computing to the Mainstream*, Microsoft (June 9, 2006), https://news.microsoft.com/2006/06/09/microsoft-releases-windows-compute-cluster-server-2003-bringing-high-performance-computing-to-the-mainstream/.  Further, earlier versions of CSS were available to the public as early as late-2004.  *See, e.g.*, Erin Lai, *Microsoft offers Beta 2 of Compute Cluster Server 2003*, COMPUTERWORLD (Nov. 15, 2005), https://www.computerworld.com/article/2559328/microsoft-offers-beta-2-of-compute-cluster-server-2003.html.

The alleged inventors of the '768 patent also knew about CCS at least because Bill Gates announced it while giving the highly attended and reported keynote speech for Supercomputing 2005—an industry event.  *See, e.g.*, Ina Fried, *Gates Touts Microsoft's Supercomputing Move*, ZDNet (Nov. 15, 2005), https://www.zdnet.com/article/gates-touts-microsofts-supercomputing-move/; Press Release, *Microsoft Chairman and Chief Software Architect Bill Gates to Deliver Keynote at SC/05 Conference* (July 25, 2005), http://sc05.supercomputing.org/news/press_releases_07252005.php.  In addition, ACS had a booth at Supercomputing 2005 on the exact same floor as Microsoft—which, upon information and belief, was displaying CCS.  *See* Supercomputing 2005 Floor Plan, http://sc05.supercomputing.org/pdf/SC05_low_flrpln_10-24-05_.pdf.

DEFENDANT NVIDIA'S SUPPLEMENTAL INVALIDITY DISCLOSURES
ADVANCED CLUSTER SYSTEMS, INC. V. NVIDIA CORPORATION
CASE NO. 1:19-CV-2032-CFC

discloses the following license agreements that may be relevant to such a comparability analysis:

NVIDIA-ACS-0165841–NVIDIA-ACS-0165905, NVIDIA-ACS-0232917–NVIDIA-ACS-0233354, NVIDIA-ACS-0234469-NVIDIA-ACS-0234619.  NVIDIA has also identified three additional license agreements (including agreements with Freescale, Implicit Networks, Inc., and one additional third party) that will be produced subject to the satisfaction of the notice periods in the agreements.  NVIDIA may also rely on agreements produced by Plaintiff or third parties.

**C.     Paragraph 8(c) of Scheduling Order ("Documents sufficient to show the sales, revenue, cost, and profits for Accused Instrumentalities identified pursuant to paragraph 3(b) of this Order for any period of alleged infringement")**

Please see NVIDIA-ACS-0163382–NVIDIA-ACS-0163413, NVIDIA-ACS-0165840, NVIDIA-ACS-0239613–NVIDIA-ACS-0239621.  NVIDIA has endeavored to overinclusively produce financial information, and by producing any financial information for any of the defendants or for any particular part number, NVIDIA does not admit or concede that any sales or shipments are or should be considered U.S. sales or U.S. activity for the purposes of damages in this litigation.

**D.     Paragraph 8(d) of Scheduling Order ("All agreements that may be used to support the damages case of the party that is denying infringement.")**

NVIDIA may rely on agreements in Section VII.B above and any agreements produced by third parties and Plaintiff.

DATED: August 17, 2021

**OF COUNSEL**:

Mark Fowler (*Pro Hac Vice*)
Clayton Thompson (*Pro Hac Vice*)

DLA PIPER LLP (US)

/s/      *Brian A. Biggs*
Brian A. Biggs (DE Bar No. 5591)
Erin E. Larson (DE Bar No. 6616)

Jake Zolotorev (*Pro Hac Vice*)
Carrie Williamson (*Pro Hac Vice*)
Jonathan Hicks *(Pro Hac Vice)*
Asa Wynn-Grant (*Pro Hac Vice*)
Monica de Lazzari (*Pro Hac Vice*)
Peter Nelson *(Pro Hac Vice)*
2000 University Avenue
East Palo Alto, CA 94303-2214
mark.fowler@us.dlapiper.com
clayton.thompson@us.dlapiper.com
jake.zolotorev@us.dlapiper.com
carrie.williamson@us.dlapiper.com
asa.wynn-grant@us.dlapiper.com
monica.delazzari@us.dlapiper.com
peter.nelson@us.dlapiper.com

1201 North Market Street, Suite 2100
Wilmington, DE 19801-3046
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
brian.biggs@dlapiper.com
erin.larson@dlapiper.com

*Attorneys for Defendant NVIDIA LLC*

DEFENDANT NVIDIA'S SUPPLEMENTAL INVALIDITY DISCLOSURES
ADVANCED CLUSTER SYSTEMS, INC. V. NVIDIA CORPORATION
CASE NO. 1:19-CV-2032-CFC