IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ADVANCED CLUSTER SYSTEMS, INC., ) | |
| ) | |
| Plaintiff, ) | **Redacted - Public Version** |
| ) | |
| v. ) | C.A. No. 19-2032-MN-CJB |
| ) | |
| NVIDIA CORPORATION, NVIDIA ) | ██████████████████████ |
| SINGAPORE PTE. LTD., and NVIDIA ) | |
| INTERNATIONAL, INC., ) | |
| ) | |
| Defendants. ) | |

## LETTER TO THE HONORABLE CHRISTOPHER J. BURKE
## FROM NATHAN R. HOESCHEN

OF COUNSEL:
Jon W. Gurka
Brian Claassen
Cheryl Burgess
Pushkal Mishra
KNOBBE, MARTENS, OLSON
& BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
(949) 760 0404

Karl W. Kowallis
KNOBBE, MARTENS, OLSON
& BEAR, LLP
115 Avenue of the Americas, 24th Floor
New York, NY 10036
(212) 849-3024

Ben K. Shiroma
KNOBBE, MARTENS, OLSON
& BEAR, LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
(310) 551-3450

Dated: September 13, 2022

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
Emily S. DiBenedetto (No. 6779)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
nhoeschen@shawkeller.com
edibenedetto@shawkeller.com
*Attorneys for Plaintiff*



Nathan R. Hoeschen
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0709
nhoeschen@shawkeller.com

September 13, 2022

**BY CM/ECF & HAND DELIVERY**
The Honorable Christopher J. Burke
U.S. District Court for the District of Delaware
844 North King Street
Wilmington, DE 19801



**Redacted - Public Version**

Re:  *Advanced Cluster Systems, Inc. v. NVIDIA Corp.*, C.A. No. 19-2032-MN-CJB

Dear Judge Burke:

ACS files this letter brief in opposition to the NVIDIA Defendants' motion to compel (D.I. 198) (the "Motion"), which is procedurally and substantively deficient and should be denied.

## I.    NVIDIA's Motion Is Premature And Improper

NVIDIA did not properly meet and confer with ACS.  NVIDIA did not apprise ACS of the issues raised in this motion until the eleventh hour, summarily adding them to a meet and confer scheduled for the purpose of discussing the Knobbe Martens subpoena.  (Ex. 3 at 1).  █████████
███████████████████████████████████████████████████  NVIDIA also requested ACS's tax returns for the first time.  *Id.* at ¶ 5.  Although, *NVIDIA's* counsel proposed during the meet and confer that the Parties agree on more time to resolve ACS's outstanding issues so as to not raise them prematurely (*Id.* at ¶ 7), NVIDIA declined to do so with respect to its late-identified disputes, choosing to instead bring its own premature motion.  *Compare* Ex. 2 at 1–2; Ex. 4 *with* Ex. 5.  The Court should deny the requested relief because NVIDIA did not properly meet and confer.  *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, 2010 WL 1135739, at *1–2 (D. Del. Mar. 23, 2010); *see also* Fed. R. Civ. P. 37(a)(1).

NVIDIA violated the Protective Order.   The *Stipulated* Protective Order, requires that "the Receiving Party shall not use or disclose a document or information for which a claim of privilege . . . is made pursuant to this paragraph for any purpose until the matter is resolved . . . by a decision of this court."  D.I. 24 at 34–35; *see also* Fed. R. Civ. P. 26(b)(5)(B).  Sections I.B and I.C of NVIDIA's Motion violates the parties' agreement by using and disclosing the contents of the clawed back documents.  NVIDIA claims its "descriptions reflect[] the [P]arties' discussions and ACS'[s] log entries."  A review of ACS's privilege logs confirms this is not accurate.  *See* Exs. D–E, N–O.  Nor did the Parties discuss the documents' contents at the meet and confer.  Burgess Decl. at ¶ 4.  The only possible source for NVIDIA's descriptions is the documents themselves.  Ex. 1.  NVIDIA's violation is troubling given its delayed, and only partial, affirmation of compliance with the Protective Order.  Exs. B–C; Ex. 6 at 1; Ex. 7.  The Court should accordingly

SHAW KELLER LLP

Page 2

strike §§ I.B and I.C of the Motion and deny the relief requested therein.

## II.    The Clawed Back Documents Are Privileged; ACS's Claw Backs Were Proper

Attorney-client privilege extends to privileged persons. *See WebXchange Inc. v. Dell Inc.*, 264 F.R.D. 123, 126 (D. Del. 2010). "The client, the attorneys, and any of their agents that help facilitate attorney-client communications or legal representation are included within 'privilege persons.'" *Id.*  In *WebXchange*, the court found disclosures to employees of a company were privileged because the disclosures were "made within the context of their employment capacities, or in the context of [] assisting [the declarant] in obtaining legal advice." *Id.*  The work product doctrine applies where a document "can fairly be said to have been prepared or obtained because of the prospect of litigation." *Moore v. Plains All Am. GP, LLC*, 2015 WL 5545306, at *4 (E.D. Pa. Sept. 18, 2015). This "may extend to documents prepared in anticipation of litigation by a party or its representative." *Id.*  The common interest doctrine is an exception to the rule that voluntary disclosure to a third-party of privileged information waives the privilege." *TC Tech. LLC v. Sprint Corp.*, 2018 WL 6584122, at *2 (D. Del. Dec. 13, 2018). Common interest "protects all communications shared within a proper community of interest." *Id.* (internal quotations omitted).  "[T]he common interest doctrine does not strictly require that communications be between separate attorneys. It is sufficient to show that the client and third[-]parties shared an interest that is 'identical, not similar,' and 'legal, not solely commercial.'" *Id.* at *3.

Communications within ACS and with Equalis are privileged.  At all times from May 2012 to January 2019, Mr. Bancroft was on ACS's Business Advisory Board. Ex. 8 at ¶ 33; *see also* Ex. 9 at -922.  In exchange for Mr. Bancroft's service, ACS awarded Mr. Bancroft options to purchase ACS shares. Ex. 9 at -914; Ex. 10 at 159:11–16. Mr. Bancroft undoubtedly plays a role in ACS. NVIDIA itself highlighted Mr. Bancroft's role at ACS during his deposition. Ex. 10 at 159:4–19. Mr. Tannenbaum's communications with Mr. Bancroft were in the scope of Mr. Bancroft's relationship with ACS. *See WebXchange*, 264 F.R.D. at 126. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ They are therefore subject to the attorney-client privilege.  In the alterative, even if not a privileged person, ACS's communications with Mr. Bancroft contain privileged information protected by the common interest doctrine.  Mr. Bancroft is an ACS stock option holder, and has a common interest with ACS ███████ *See Wise v. Biowish Techs., Inc.*, 2019 WL 4344273, at *5 (D. Del. Sept. 12, 2019) ("Because [purported third-party] and [Plaintiff] were both stockholders . . . an argument could be made that they shared a 'common interest privilege.'"); *TC Tech.*, 2018 WL 6584122, at *4–5 (finding communications were protected by common interest doctrine as "the interest here in acquiring and enforcing a patent is a legal interest" and "substantively identical"). NVIDIA itself made this point during Mr. Bancroft's deposition. *See* Ex. 10 at 161:2–18.

Ms. Tannenbaum was the CFO of ACS from January 2017 to April 2018, *i.e.*, a privileged person. *See WebXchange*, 264 F.R.D. at 126. NVIDIA never argues otherwise, and repeatedly highlighted Ms. Tannenbaum's role at ACS during her deposition. *See, e.g.*, Ex. 11 at 14:14–18:22, 73:15–25, 153:18–23, 154:5–9, 156:4–9. Ms. Tannenbaum's email address is immaterial. AFA was her

SHAW KELLER LLP
Page 3

company, *id.* at 47:14–21, and NVIDIA cites no case law that the email address of a recipient is material to their qualification as a privileged person. ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ They are subject to the attorney-client privilege.  In the alternative, they are work product as they were created for an attorney in anticipation of litigation.

ACS's communications with Equalis are privileged because ACS shared a common interest with Equalis ███████████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████

NVIDIA's characterization of the contents of the clawed back documents[1] is not dispositive. NVIDIA's arguments in § I.B are misleading.  ACS is not hiding ACS's valuation, and the redacted portions of the documents are not related to any substantive discussion of valuation.  NVIDIA's arguments in § I.C proceed from a flawed premise: ████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████ NVIDIA's content-based arguments are therefore baseless.

NVIDIA's requested relief is also improper for the additional reason that NVIDIA already used its full seven hours of deposition time with both Mr. Tannenbaum and Dr. Dauger, and should be denied for that reason as well.

## III.    NVIDIA's Request For Tax Returns Is Improper And Regardless, Moot

NVIDIA mischaracterizes this dispute as a general request for financial records.  This dispute crystalized during the meet and confer into a limited dispute over production of ACS's tax returns for the years 2011-2018.  Ex. 3 at 1; Burgess Decl. at ¶¶ 5–6.[2]  ACS confirmed that it had performed a reasonable search for ACS financial records and produced the resulting non-privileged documents.  Burgess Decl. at ¶ 6.  NVIDIA then, for the first time, requested that ACS produce its tax returns ████████████████████████████████ and improperly sought relief from the court that same day.  ACS is willing to perform a reasonable search for and production of its tax returns for 2011-2018.  NVIDIA's requested relief should therefore be denied as moot.

---

[1] If the Court desires further detail, ACS invites the Court to conduct an *in camera* review.

[2] NVIDIA's argument that ACS put "the sales of [ACS's] products" at issue also mischaracterizes the facts by truncating Mr. Tannenbaum's full response ██████████████████████████████ ███████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████

Although ACS disagrees that its financial documents are relevant, it has already produced the available company financial documents.

SHAW KELLER LLP
Page 4

Respectfully submitted,

*/s/ Nathan R. Hoeschen*

Nathan R. Hoeschen (No. 6232)

cc:  Clerk of the Court (by CM/ECF & Hand Delivery)
     Counsel of Record (by CM/ECF & Email)

# EXHIBIT 1

| From: | Ben Shiroma |
|---|---|
| To: | Williamson, Carrie; NVIDIA-ACS-DLA |
| Cc: | ACSService |
| Subject: | RE: ACS v. NVIDIA - improper use and disclosure of clawed back documents in D.I. 198 |
| Date: | Tuesday, September 13, 2022 11:55:00 AM |

Carrie,

ACS disagrees with NVIDIA's position. Despite your claim that NVIDIA "relies on those meet and confer discussions, separate of the documents," you do not specifically identify any discussions that can support NVIDIA's improper descriptions. Indeed, the one specific statement you reference, "internal discussions," does **not** disclose the clawed back documents contents at all. ACS also disagrees that NVIDIA can properly claim prejudice from the timing of ACS's privilege logs, ACS produced its privilege logs in accordance with the time table the Parties agreed upon over the holiday weekend. Any complaint NVIDIA has with the timing of its motion is its own doing. NVIDIA chose to proceed with its motion before the issue had sufficiently crystalized to bring to the Court's attention.

ACS also disagrees with your characterization of this as an "orchestrated diversion." Your own statements in the portions of the deposition transcript you cite restate the impropriety of using the clawed back documents. Tr. at 252:12–18, 254:1–6. NVIDIA selectively does not acknowledge that Mr. Gurka acquiesced your approach and restated his objection that NVIDIA had run out of time to question Mr. Tannebaum. Tr. at 254:9–14. NVIDIA now improperly seeks to rely on its purported inability to use the clawed back information during the deposition to seek further deposition time (despite already using the entire allotted seven hours), while at the same time using and disclosing the clawed back information in its briefing.

Best,
Ben

**Ben Shiroma**
Associate
Ben.Shiroma@knobbe.com
310-601-1269 **Direct**
**Knobbe Martens**
1925 Century Park East, Suite 600
Los Angeles, CA 90067
https://www.knobbe.com/attorneys/ben-k-shiroma

**From:** Williamson, Carrie <Carrie.Williamson@us.dlapiper.com>
**Sent:** Monday, September 12, 2022 11:45 AM
**To:** Ben Shiroma <Ben.Shiroma@knobbe.com>; NVIDIA-ACS-DLA <NVIDIA-ACS-DLA@us.dlapiper.com>
**Cc:** ACSService <ACSService@knobbe.com>
**Subject:** RE: ACS v. NVIDIA - improper use and disclosure of clawed back documents in D.I. 198

Ben,

We entirely disagree with ACS' characterization that NVIDIA "used and disclosed the contents" of documents clawed back by ACS.

First, the parties met and conferred regarding this dispute, and NVIDIA relies on those meet and confer discussions, separate of the documents, for its motion.  During that meet and confer session, ACS stated that the various categories of documents were "internal ACS communications."  The fact that a document is an internal communication does not make the document privileged.  In relying on ACS' general verbal characterization as well as its belatedly-produced privilege log and other non-clawed back materials, NVIDIA has carefully avoided describing the contents of any of the clawed back documents themselves.

Second, your message points to Fed. R. Civ. P. 26(b)(5)(B), which states a party "may promptly present the information to the court under seal for a determination of the claim."  ACS seems to be taking the contrary position that NVIDIA cannot present any information to the court, no matter if general and detached from what the documents describe.  Nor does your correspondence identify any particular improper disclosure of the documents' contents, because we have not discussed them.  ACS is not offering to provide the documents *in camera* in order to facilitate any particular proposed resolution regarding NVIDIA's briefing.

This seems to be an orchestrated diversion to prevent the Court from evaluating ACS' untenable claims of privilege.  Indeed, ACS invited NVIDIA to "use" the documents it clawed back, further calling into question whether it really believes that the clawed back documents are privileged.  After all of ACS' clawback letters (dated August 23 and 25) and after NVIDIA's counsel stated that it was keeping Mr. Tannenbaum's August 26 deposition open because there was a dispute over documents that would have been used during the deposition were privileged, counsel for ACS asked counsel for NVIDIA to use those clawed back documents during the deposition:





As you are also aware, ██████████████████████████████████████████████
████████ (Tr. at 162-170) ████████████████████████████████████████ Tr. at 143-148.

In short, NVIDIA does not agree to withdraw NVIDIA's motion.

Regards,
Carrie

---

**From:** Ben Shiroma <Ben.Shiroma@knobbe.com>
**Sent:** Wednesday, September 7, 2022 5:27 PM

**To:** Williamson, Carrie <Carrie.Williamson@us.dlapiper.com>; NVIDIA-ACS-DLA <NVIDIA-ACS-DLA@us.dlapiper.com>
**Cc:** ACSService <ACSService@knobbe.com>
**Subject:** ACS v. NVIDIA - improper use and disclosure of clawed back documents in D.I. 198

⚠ EXTERNAL MESSAGE

Carrie,

In its motion to compel (D.I. 198), NVIDIA used and disclosed the contents of documents clawed back by ACS.  Both the Protective Order and the Federal Rules prohibit a party from using and disclosing clawed back documents during the pendency of a motion to compel those documents.  D.I. 24 at 34–35; Fed. R. Civ. P. 26(b)(5)(B).  ACS requests that NVIDIA immediately withdraw its motion, which improperly used and disclosed the contents of the privileged documents in dispute (D.I. 198).  NVIDIA may, if it wishes, re-file its motion after removing the portions using and disclosing the contents of the clawed back documents in dispute.  NVIDIA may not make any other changes to its re-filed motion.

ACS reserves all rights to seek relief associated with NVIDIA's improper use and disclosure of clawed back documents.

Best,
Ben

**Ben Shiroma**
Associate
Ben.Shiroma@knobbe.com
310-601-1269 **Direct**
**Knobbe Martens**
1925 Century Park East, Suite 600
Los Angeles, CA 90067
https://www.knobbe.com/attorneys/ben-k-shiroma

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com. Thank you.

# EXHIBIT 2

| | |
|---|---|
| **From:** | O'Byrne, Stephanie |
| **To:** | Cheryl Burgess; Jon Gurka; Williamson, Carrie |
| **Cc:** | NVIDIA-ACS-DLA; Lit ZTANNL.017L; Karen Elizabeth Keller; Nathan R. Hoeschen - Shaw Keller LLP (nhoeschen@shawkeller.com); emily.dibenedetto@shawkeller.com |
| **Subject:** | RE: ACS v. NVIDIA: NVLink documents |
| **Date:** | Friday, August 26, 2022 3:01:41 PM |
| **Attachments:** | image001.png |

Hi Cheryl,

As we discussed today, NVIDIA is not going to provide an additional witness on firmware, so this issue is ripe and we don't agree it should be held in abeyance or otherwise raised after the close of discovery.

We agreed to look for documents and agree that this issue is not ripe, may be resolved soon and can be tabled as you propose below.

Regards,
Stephanie

**Stephanie E. O'Byrne**
Of Counsel

T   +1 302 468 5645
F   +1 302 691 4745
stephanie.obyrne@us.dlapiper.com



**From:** Cheryl Burgess <Cheryl.Burgess@knobbe.com>
**Sent:** Friday, August 26, 2022 5:19 PM
**To:** Jon Gurka <Jon.Gurka@knobbe.com>; Williamson, Carrie <Carrie.Williamson@us.dlapiper.com>
**Cc:** NVIDIA-ACS-DLA <nvidia-acs-dla@dlapiper.com>; Lit ZTANNL.017L <LitZTANNL.017L@knobbe.com>; Karen Elizabeth Keller <kkeller@shawkeller.com>; Nathan R. Hoeschen - Shaw Keller LLP (nhoeschen@shawkeller.com) <nhoeschen@shawkeller.com>; emily.dibenedetto@shawkeller.com
**Subject:** RE: ACS v. NVIDIA: NVLink documents

⚠ EXTERNAL MESSAGE

Clayton and Peter,

Thank you for discussing the three issues contained in our proposed letter to the Court at today's meet and confer.  We understand that you are going to confer with NVIDIA next week about the documents requested in the first and third identified issues.  We view the second issue, which

relates to NVIDIA's 30(b)(6) deponents, as related to the first issue.  In light of your commitment that you will investigate the documents that are the subjects of first and third issues identified for the Court in the proposed letter, ACS proposes that the parties agree that ACS need not file the proposed letter with the Court today to preserve its rights to pursue these three discovery issues.

On our call the parties agreed to follow up call next Friday regarding the draft product and code stipulation.  We propose following up on NVIDIA's investigation into the additional requested documents at that time.  If the parties are at an impasse at that time, the parties will then proceed with a joint letter to the Court.  Please confirm that NVIDIA agrees with this approach and will not assert that these discovery disputes are waived or otherwise untimely if brought to the court within a reasonable time after the parties' pending meet and confer.

Best,
Cheryl

**Cheryl Burgess**
Partner
949-721-2935 Direct
**Knobbe Martens**

**From:** Jon Gurka <Jon.Gurka@knobbe.com>
**Sent:** Thursday, August 25, 2022 4:25 PM
**To:** Williamson, Carrie <Carrie.Williamson@us.dlapiper.com>
**Cc:** NVIDIA-ACS-DLA <nvidia-acs-dla@dlapiper.com>; Lit ZTANNL.017L <LitZTANNL.017L@knobbe.com>; Karen Elizabeth Keller <kkeller@shawkeller.com>; Nathan R. Hoeschen - Shaw Keller LLP (nhoeschen@shawkeller.com) <nhoeschen@shawkeller.com>; emily.dibenedetto@shawkeller.com
**Subject:** RE: ACS v. NVIDIA: NVLink documents

Carrie -

I am following up on our correspondence regarding NVIDIA's production of documents referred to by ███████████ during their 30(b)(6) depositions and NVIDIA's failure to provide a 30(b)(6) witness on firmware for the accused products.

We have not heard back regarding your availability to meet and confer on these issues today.  As I mentioned before, NVIDIA's failure to respond to ACS's outstanding requests is highly prejudicial and impacts ACS's ability to complete its infringement contentions due next Thursday, September 1, 2022.

We ask that NVIDIA confirm it will immediately produce the requested documents and provide a 30(b)(6) corporate designee on Topics 1 and 8 related to firmware.  Absent NVIDIA's confirmation, we expect NVIDIA to be prepared to discuss these issues at the meet and confer scheduled for tomorrow.

Should the parties be unable to reach agreement, we are attaching a proposed joint letter for a

discovery teleconference.  We are waiting to file the letter pending agreement that we are at an impasse at tomorrow's meet and confer.

Please confirm that NVIDIA will not use the delay in meeting and conferring to argue against a potential extension for ACS's infringement contention deadline.

Jon

**From:** Cheryl Burgess <Cheryl.Burgess@knobbe.com>
**Sent:** Wednesday, August 24, 2022 9:51 PM
**To:** Williamson, Carrie <Carrie.Williamson@us.dlapiper.com>
**Cc:** NVIDIA-ACS-DLA <nvidia-acs-dla@dlapiper.com>; Lit ZTANNL.017L <LitZTANNL.017L@knobbe.com>; Karen Elizabeth Keller <kkeller@shawkeller.com>; Nathan R. Hoeschen - Shaw Keller LLP (nhoeschen@shawkeller.com) <nhoeschen@shawkeller.com>; emily.dibenedetto@shawkeller.com; Jon Gurka <Jon.Gurka@knobbe.com>
**Subject:** RE: ACS v. NVIDIA: NVLink documents

Carrie,

Further to the issues identified in Mr. Gurka's email below, we have also been reviewing NVIDIA's production for ██████████████████ described by ██████████ during his deposition.  We have not been able to identify this ██████████ in the production. ████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████  This information is highly relevant to indirect infringement. Absent written confirmation from you by tomorrow morning that NVIDIA will produce ████████████████ ██████████  we will deem the parties are at an impasse on this issue too.

Best,
Cheryl

**Cheryl Burgess**
Partner

**949-721-2935 Direct**

**Knobbe Martens**

**From:** Jon Gurka <Jon.Gurka@knobbe.com>
**Sent:** Wednesday, August 24, 2022 1:54 PM
**To:** Williamson, Carrie <Carrie.Williamson@us.dlapiper.com>
**Cc:** NVIDIA-ACS-DLA <nvidia-acs-dla@dlapiper.com>; Lit ZTANNL.017L <LitZTANNL.017L@knobbe.com>; Karen Elizabeth Keller <kkeller@shawkeller.com>; Nathan R. Hoeschen - Shaw Keller LLP (nhoeschen@shawkeller.com) <nhoeschen@shawkeller.com>; emily.dibenedetto@shawkeller.com
**Subject:** RE: ACS v. NVIDIA: NVLink documents
**Importance:** High

Carrie –

I am following up on Ms. Burgess' email from last evening, as well as Mr. Kowallis' email from August 21 regarding NVIDIA's failure to provide a 30(b)(6) witness on firmware for the accused products. Further, my understanding is that we have requested access to the NVIDIA source code computer.

All of these issues are related and urgent because it is apparent to ACS that NVIDIA has not provided highly relevant discovery regarding the accused products and the fact discovery cutoff is in two days.

If you cannot provide us with a time to meet and confer today, or confirm that you are producing all of the requested information below and a corporate designee on Topics 1 and 8 related to firmware, we will have no choice but to file a motion to compel and deem the parties at an impasse.

Moreover, NVIDIA's failure to provide this highly relevant discovery is prejudicial and will significantly impact ACS's ability to prepare final infringement contentions next week.  We reserve all of our rights to seek appropriate relief from the Court.

We look forward to hearing from you as soon as possible.

Jon

---

**From:** Cheryl Burgess <Cheryl.Burgess@knobbe.com>
**Sent:** Tuesday, August 23, 2022 7:52 PM
**To:** Williamson, Carrie <Carrie.Williamson@us.dlapiper.com>
**Cc:** NVIDIA-ACS-DLA <nvidia-acs-dla@dlapiper.com>; Lit ZTANNL.017L <LitZTANNL.017L@knobbe.com>; Williamson, Carrie <Carrie.Williamson@us.dlapiper.com>; Nathan R. Hoeschen - Shaw Keller LLP (nhoeschen@shawkeller.com) <nhoeschen@shawkeller.com>
**Subject:** ACS v. NVIDIA: NVLink documents

Counsel,

We request immediate production of the following documents referred to by ██████████ during his deposition. These documents are highly relevant to the operation of the accused GPU chips and NVLink, and we have not identified copies in NVIDIA's current production.  NVIDIA's failure to produce such highly relevant documents is extremely prejudicial to ACS.  Please confirm by COB tomorrow that NVIDIA will be producing these documents, or provide a time to meet and confer tomorrow regarding NVIDIA's refusal to do so.



1. ██████████████████████████████████
██████████████████████████████████
████████████████████████████████
██████████████████████████████
███████████████████ We also request that NVIDIA produce any internally

linked or referenced materials within the ▮▮▮▮▮▮▮▮▮▮ documents.



2. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮ We also request that NVIDIA produce any internally linked or referenced materials within the ▮▮▮▮▮▮▮▮▮▮▮▮ documents.

3. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮ This includes:

   a. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ We also request
   that NVIDIA produce any internally linked or referenced materials within these ▮
   documents.
   b. T▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ We also request that
   NVIDIA produce any internally linked or referenced materials within these ▮
   documents.

4. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Best,
Cheryl

**Cheryl Burgess**
Partner
Cheryl.Burgess@knobbe.com
949-721-2935 **Direct**
**Knobbe Martens**
2040 Main St., 14th Fl.
Irvine, CA 92614
www.knobbe.com/cheryl-burgess

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com. Thank you.

# EXHIBIT 3

| | |
|---|---|
| **From:** | Stephen Larson |
| **To:** | Nelson, Peter; Williamson, Carrie; O"Byrne, Stephanie; Karen Keller |
| **Cc:** | Cheryl Burgess; NVIDIA-ACS-DLA; ACSService; Nate Hoeschen |
| **Subject:** | RE: ACS v. NV - Deposition Scheduling and Format |
| **Date:** | Friday, August 26, 2022 12:50:01 PM |
| **Attachments:** | image002.png |
| | image003.png |

Counsel,

Thank you for meeting and conferring on the Knobbe and individual Knobbe witness deposition issues.  As we discussed, we do not oppose NVIDIA taking these depositions after the close of fact discovery after the parties' 30(b)(6) issues are resolved.  Thus, we believe NVIDIA's cross-motion as to the individual witnesses is unnecessary.

We are also disappointed by NVIDIA's attempt to have the last brief on these issues.  As I mentioned, if we had brought a motion to quash in the Central District of California, we would have been entitled to a 25-page reply.  We proposed bringing the issues directly to Judge Burke to facilitate and streamline the resolution of the parties' 30(b)(6) issues.  That being said, we are prepared to agree to your briefing proposal in the interest of resolving these disputes as soon as possible under Judge Burke's discovery procedures.  We will circulate an updated letter that includes a reference to the parties' meet and confer today.

Best,
Steve

---

**From:** Nelson, Peter <Peter.Nelson@us.dlapiper.com>
**Sent:** Thursday, August 25, 2022 7:17 AM
**To:** Stephen Larson <Stephen.Larson@knobbe.com>; Williamson, Carrie <Carrie.Williamson@us.dlapiper.com>; O'Byrne, Stephanie <Stephanie.OByrne@us.dlapiper.com>; Karen Keller <kkeller@shawkeller.com>
**Cc:** Cheryl Burgess <Cheryl.Burgess@knobbe.com>; NVIDIA-ACS-DLA <NVIDIA-ACS-DLA@us.dlapiper.com>; ACSService <ACSService@knobbe.com>; Nate Hoeschen <nhoeschen@shawkeller.com>
**Subject:** Re: ACS v. NV - Deposition Scheduling and Format

Hi Stephen,

We are generally available tomorrow after 12:00 PM EST.  We'd like to address all outstanding issues including:  (a) ACS' request to claw back certain documents; and (b) ███████████████████████████████████████████

Best regards,
Peter

Peter Nelson
Associate

T  +1 202 799 4092
M  +1 301 346 1357
peter.nelson@us.dlapiper.com

**DLA Piper LLP (US)**
dlapiper.com



**From:** Stephen Larson <Stephen.Larson@knobbe.com>
**Sent:** Wednesday, August 24, 2022 10:47 PM
**To:** Williamson, Carrie <Carrie.Williamson@us.dlapiper.com>; O'Byrne, Stephanie
<Stephanie.OByrne@us.dlapiper.com>; Karen Keller <kkeller@shawkeller.com>
**Cc:** Nelson, Peter <Peter.Nelson@us.dlapiper.com>; Cheryl Burgess <Cheryl.Burgess@knobbe.com>;
NVIDIA-ACS-DLA <NVIDIA-ACS-DLA@us.dlapiper.com>; ACSService <ACSService@knobbe.com>;
Nate Hoeschen <nhoeschen@shawkeller.com>
**Subject:** Re: ACS v. NV - Deposition Scheduling and Format

⚠️ **EXTERNAL MESSAGE**

Carrie,

Thank you for your email.  Let's meet and confer on NVIDIA's motion and proposed briefing schedule
on Friday.  Please let us know when NVIDIA is available.

Many thanks,
Steve

**From:** Williamson, Carrie <Carrie.Williamson@us.dlapiper.com>
**Sent:** Wednesday, August 24, 2022 6:44:29 PM
**To:** Stephen Larson <Stephen.Larson@knobbe.com>; O'Byrne, Stephanie
<Stephanie.OByrne@us.dlapiper.com>; Karen Keller <kkeller@shawkeller.com>
**Cc:** Nelson, Peter <Peter.Nelson@us.dlapiper.com>; Cheryl Burgess <Cheryl.Burgess@knobbe.com>;
NVIDIA-ACS-DLA <NVIDIA-ACS-DLA@us.dlapiper.com>; ACSService <ACSService@knobbe.com>;
Nate Hoeschen <nhoeschen@shawkeller.com>
**Subject:** RE: ACS v. NV - Deposition Scheduling and Format

Stephen,

We understand that Knobbe is refusing to produce Mr. Cannon and Mr. Smemoe for the depositions
until the dispute regarding Knobbe's Rule 45 subpoena is resolved.  We had those depositions on
calendar for August 16 and 18 for the individuals in their personal capacities, and Knobbe cancelled
those depositions.  We understand that Knobbe and Mr. Cannon and Mr. Smemoe all agree that Mr.

Cannon and Mr. Smemoe and Knobbe *will* be made available for deposition and the issue is timing (what date the depositions will occur) and scope (scope of the Rule 45 subpoena topics).  Is that correct?  Given that (1) discovery is closing, (2) there is no date set for any of those 3 depositions, (3) Knobbe may seek to withdraw its motion to quash and then refuse to provide any depositions following the close of fact discovery, and (4) NVIDIA may need to amend its final contentions related to these depositions,  NVIDIA needs to preserve its ability to seek discovery from Knobbe, Mr. Cannon and Mr. Smemoe and is thus cross-moving to compel to ensure that NVIDIA may be able to depose all 3 witnesses (Knobbe, Mr. Cannon, and Mr. Smemoe) following close of fact discovery when the dispute is resolved.  In other words, part of the relief that NVIDIA will ask for with the court is that Mr. Cannon and Mr. Smemoe appear for deposition following close of fact discovery (along with Knobbe).  Because NVIDIA is asking for relief from the court, it is cross-moving.  I hope this clears up any confusion.

Thanks,
Carrie

---

**From:** Stephen Larson <Stephen.Larson@knobbe.com>
**Sent:** Wednesday, August 24, 2022 2:42 PM
**To:** O'Byrne, Stephanie <Stephanie.OByrne@us.dlapiper.com>; Karen Keller <kkeller@shawkeller.com>; Williamson, Carrie <Carrie.Williamson@us.dlapiper.com>
**Cc:** Nelson, Peter <Peter.Nelson@us.dlapiper.com>; Cheryl Burgess <Cheryl.Burgess@knobbe.com>; NVIDIA-ACS-DLA <NVIDIA-ACS-DLA@us.dlapiper.com>; ACSService <ACSService@knobbe.com>; Nate Hoeschen <nhoeschen@shawkeller.com>
**Subject:** RE: ACS v. NV - Deposition Scheduling and Format

⚠ EXTERNAL MESSAGE

Counsel,

We object to NVIDIA's inclusion of its motions to compel and, in particular, NVIDIA's motion to compel the individual depositions of Ted Cannon and Lance Smemo.  NVIIDA never suggested it had any issue with these individual depositions proceeding after the parties' 30(b)(6) issues are resolved. The parties have not met and conferred on NVIDIA's motions and it is not clear to us what relief NVIDIA now seeks: is NVIDIA seeking the individual depositions before the Court resolves the parties' 30(b)(6) issues?  If not, NVIDIA's motion is unnecessary.  If NVIDIA seeks to depose these individuals before the Court resolves the parties' 30(b)(6) issues, Knobbe Martens and ACS will oppose such a motion and seek a protective order on such discovery.

If NVIDIA intends to bring its motions, we are available to meet and confer this Friday before 3 p.m. EST on (1) NVIDIA's motions and (2) Knobbe Martens and ACS's motion for a protective order as to the individual depositions of Ted Cannon and Lance Smemo.  We can discuss NVIDIA's new proposal regarding briefing at that meet and confer.

Best,
Steve

---

**From:** O'Byrne, Stephanie <Stephanie.OByrne@us.dlapiper.com>
**Sent:** Wednesday, August 24, 2022 9:45 AM
**To:** Karen Keller <kkeller@shawkeller.com>; Williamson, Carrie
<Carrie.Williamson@us.dlapiper.com>
**Cc:** Nelson, Peter <Peter.Nelson@us.dlapiper.com>; Stephen Larson
<Stephen.Larson@knobbe.com>; Cheryl Burgess <Cheryl.Burgess@knobbe.com>; NVIDIA-ACS-DLA
<NVIDIA-ACS-DLA@us.dlapiper.com>; ACSService <ACSService@knobbe.com>; Nate Hoeschen
<nhoeschen@shawkeller.com>
**Subject:** RE: ACS v. NV - Deposition Scheduling and Format

Karen,

Please see the attached revised motion with NVIDIA's addition of its cross-motion and proposal re:
consolidated letter briefing.  If you'd like to discuss, please let us know.  Otherwise please confirm
you will proceed to file today; I am signed off with these additions.

Stephanie

## Stephanie E. O'Byrne
Of Counsel



T   +1 302 468 5645
F   +1 302 691 4745
stephanie.obyrne@us.dlapiper.com



---

**From:** Karen Keller <kkeller@shawkeller.com>
**Sent:** Wednesday, August 24, 2022 10:19 AM
**To:** Williamson, Carrie <Carrie.Williamson@us.dlapiper.com>
**Cc:** Nelson, Peter <Peter.Nelson@us.dlapiper.com>; Stephen Larson
<Stephen.Larson@knobbe.com>; Cheryl T. Burgess - Knobbe Martens Olson & Bear LLP
(cheryl.burgess@knobbe.com) <cheryl.burgess@knobbe.com>; NVIDIA-ACS-DLA <NVIDIA-ACS-
DLA@us.dlapiper.com>; ACSService@knobbe.com; Nate Hoeschen <nhoeschen@shawkeller.com>
**Subject:** FW: ACS v. NV - Deposition Scheduling and Format

⚠️ EXTERNAL MESSAGE

Carrie:

Just following up on this.

Best,
Karen

**From:** Karen Keller <kkeller@shawkeller.com>
**Sent:** Monday, August 22, 2022 6:03 AM
**To:** Williamson, Carrie <Carrie.Williamson@us.dlapiper.com>
**Cc:** Nelson, Peter <Peter.Nelson@us.dlapiper.com>; Stephen Larson
<Stephen.Larson@knobbe.com>; Cheryl Burgess <Cheryl.Burgess@knobbe.com>; NVIDIA-ACS-DLA
<NVIDIA-ACS-DLA@us.dlapiper.com>; ACSService <ACSService@knobbe.com>; Nate Hoeschen
<nhoeschen@shawkeller.com>
**Subject:** Re: ACS v. NV - Deposition Scheduling and Format

Attached.

~Karen

**From:** Williamson, Carrie <Carrie.Williamson@us.dlapiper.com>
**Date:** Friday, August 19, 2022 at 4:28 PM
**To:** Karen Keller <kkeller@shawkeller.com>
**Cc:** Nelson, Peter <Peter.Nelson@us.dlapiper.com>, Stephen Larson
<Stephen.Larson@knobbe.com>, Cheryl Burgess <cheryl.burgess@knobbe.com>, NVIDIA-ACS-
DLA <NVIDIA-ACS-DLA@us.dlapiper.com>, ACSService <ACSService@knobbe.com>, Nate
Hoeschen <nhoeschen@shawkeller.com>
**Subject:** RE: ACS v. NV - Deposition Scheduling and Format

Karen – please provide a word version.  Thanks.  We intend to cross move to compel.

Thanks,
Carrie

**From:** Karen Keller <kkeller@shawkeller.com>
**Sent:** Friday, August 19, 2022 1:24 PM
**To:** Williamson, Carrie <Carrie.Williamson@us.dlapiper.com>
**Cc:** Nelson, Peter <Peter.Nelson@us.dlapiper.com>; Stephen Larson
<Stephen.Larson@knobbe.com>; Cheryl Burgess <cheryl.burgess@knobbe.com>; NVIDIA-ACS-DLA
<NVIDIA-ACS-DLA@us.dlapiper.com>; ACSService <ACSService@knobbe.com>; Nate Hoeschen
<nhoeschen@shawkeller.com>
**Subject:** Re: ACS v. NV - Deposition Scheduling and Format

 ⚠ EXTERNAL MESSAGE

Attached is a proposed letter. Let me know if ok to file.


Karen Keller

> On Aug 19, 2022, at 2:22 PM, Williamson, Carrie <Carrie.Williamson@us.dlapiper.com> wrote:
>
> Stephen,
>
> As Peter requested below, please provide the draft letter for a request for a teleconference for Judge Burke.
>
> Thanks,
> Carrie
>
> ---
>
> **From:** Nelson, Peter <Peter.Nelson@us.dlapiper.com>
> **Sent:** Wednesday, August 17, 2022 7:18 AM
> **To:** Stephen Larson <Stephen.Larson@knobbe.com>; Williamson, Carrie <Carrie.Williamson@us.dlapiper.com>; Cheryl Burgess <Cheryl.Burgess@knobbe.com>
> **Cc:** NVIDIA-ACS-DLA <NVIDIA-ACS-DLA@us.dlapiper.com>; Karen Elizabeth Keller <kkeller@shawkeller.com>; ACSService <ACSService@knobbe.com>; Nathan R. Hoeschen - Shaw Keller LLP (nhoeschen@shawkeller.com) <nhoeschen@shawkeller.com>
> **Subject:** Re: ACS v. NV - Deposition Scheduling and Format
>
> Hi Stephen,
>
> Are you proposing that the parties submit a joint letter for a teleconference to Judge Burke?  If so, please send a proposed letter for our consideration.
>
> Best regards,
> Peter
>
> Peter Nelson
> Associate
> DLA Piper LLP (US)
> 301-346-1357
> peter.nelson@us.dlapiper.com
>
> ---
>
> **From:** Stephen Larson <Stephen.Larson@knobbe.com>
> **Sent:** Tuesday, August 16, 2022 7:02 PM

**To:** Nelson, Peter <Peter.Nelson@us.dlapiper.com>; Williamson, Carrie <Carrie.Williamson@us.dlapiper.com>; Cheryl Burgess <Cheryl.Burgess@knobbe.com>
**Cc:** NVIDIA-ACS-DLA <NVIDIA-ACS-DLA@us.dlapiper.com>; Karen Elizabeth Keller <kkeller@shawkeller.com>; ACSService <ACSService@knobbe.com>; Nathan R. Hoeschen - Shaw Keller LLP (nhoeschen@shawkeller.com) <nhoeschen@shawkeller.com>
**Subject:** RE: ACS v. NV - Deposition Scheduling and Format

⚠ EXTERNAL MESSAGE

Peter,

I write to follow up on the email below.  NVIDIA's proposal does not significantly narrow the disputes or resolve Knobbe Martens' objections, including that NVIDIA fails to identify the relevant topics with reasonable particularity.  While we remain available to discuss further, it appears the parties are at an impasse.  Accordingly, Knobbe Martens will file a motion to quash and for a protective order.  To streamline and expedite the resolution of this dispute, please let us know if NVIDIA will agree to Judge Burke deciding Knobbe Martens' motion under his procedures governing discovery disputes.

Best,
Steve

**From:** Stephen Larson
**Sent:** Saturday, August 13, 2022 11:24 AM
**To:** Nelson, Peter <Peter.Nelson@us.dlapiper.com>; Williamson, Carrie <Carrie.Williamson@us.dlapiper.com>; Cheryl Burgess <Cheryl.Burgess@knobbe.com>
**Cc:** NVIDIA-ACS-DLA <NVIDIA-ACS-DLA@us.dlapiper.com>; Karen Elizabeth Keller <kkeller@shawkeller.com>; ACSService <ACSService@knobbe.com>; Nathan R. Hoeschen - Shaw Keller LLP (nhoeschen@shawkeller.com) <nhoeschen@shawkeller.com>
**Subject:** RE: ACS v. NV - Deposition Scheduling and Format

Peter,

Thank you for your email.  NVIDIA's counterproposal does not significantly narrow the disputes or remotely address the objections and concerns we have explained in detail.  We will consider whether we can make any additional proposals to narrow the disputes and provide our position early next week.  Given the ongoing disputes regarding 30(b)(6) issues, the Cannon and Smemoe depositions cannot go forward next week.  We will reschedule the depositions to mutually agreeable dates after the 30(b)(6) issues are resolved.

Best,
Steve

---

**From:** Nelson, Peter <Peter.Nelson@us.dlapiper.com>
**Sent:** Friday, August 12, 2022 7:13 PM
**To:** Stephen Larson <Stephen.Larson@knobbe.com>; Williamson, Carrie
<Carrie.Williamson@us.dlapiper.com>; Cheryl Burgess <Cheryl.Burgess@knobbe.com>
**Cc:** NVIDIA-ACS-DLA <NVIDIA-ACS-DLA@us.dlapiper.com>; Karen Elizabeth Keller
<kkeller@shawkeller.com>; ACSService <ACSService@knobbe.com>; Nathan R.
Hoeschen - Shaw Keller LLP (nhoeschen@shawkeller.com)
<nhoeschen@shawkeller.com>
**Subject:** Re: ACS v. NV - Deposition Scheduling and Format

Stephen,

Thank you for your message.  As explained below, NVIDIA was and still is open
to compromise.

NVIDIA explained on Wednesday's meet and confer that NVIDIA could agree to
limit the scope of the subpoena if ACS and Knobbe stipulated that ACS would not
call any or rely on the statements of any Knobbe attorney in support of its case.
NVIDIA expressly stated that it was not seeking to somehow prevent ACS or
Knobbe from calling a Knobbe attorney as a witness should the conduct of a
Knobbe attorney become at issue in the case.  This important detail is missing
from your email.  As we further explained, if ACS intended to call Knobbe at
trial, then we needed to be able to explore any topics that may be subject of
testimony.  ACS and Knobbe have not been willing to represent that Knobbe will
not be testifying.

In response to your proposal, NVIDIA makes the following counterproposal:

**Topics 1, 2, 4, 7, 8, 10.**  NVIDIA explained on the call that it seeks information
on at least the family of the Asserted Patent—not just the Asserted Patent.  The
Asserted Patent family consists of U.S. Patent Nos. 10,333,768, 8,676,877,
8,140,612, and 8,082,289, as well as U.S. Provisional Patent Application Nos.
60/813,738, 60/850,908, and 60/757,573.  ACS asserts that the Asserted Patent—
through the '877, '612, and '289 patents—is entitled to claim priority to at least
the '908 provisional, and the '573 provisional is one of the documents that ACS
has identified as allegedly supporting its claimed conception date.  In other words,
NVIDIA is willing to narrow Topics 1, 2, 4, 7, 8, 10 to just the Asserted Patent
and its U.S. family members—but nothing less.

**Topic 3.**  As we explained on the meet and confer, there are sworn statements
made by one of the named inventors that the alleged invention behind the
Asserted Patent is an improvement to MGT.  The MGT patent family consists of
U.S. Patent Nos. 8,849,889 and 8,402,080; U.S. Patent Application No.
11/527,319; and U.S. Provisional Patent Application No. 60/720,442.  For this
reason, NVIDIA cannot agree to entirely drop Topic 3.

**Topic 5 and 6.**  NVIDIA is willing to narrow this request if and only if ACS and Knobbe represent that no attorney from Knobbe will testify at trial (or through any other means) regarding anything responsive to these topics and no fact or expert witness will rely on or testify about anything a Knobbe attorney said that is responsive to these topics.

**Topic 9, 11, 12, and 13.**  NVIDIA expressly stated on Wednesday's meet and confer that it is not seeking to prevent ACS or Knobbe from defending themselves from any future claim(s) that NVIDIA may or may not raise.  However, ACS and Knobbe's refusal to stipulate that a Knobbe attorney will not be called or relied upon to affirmatively support Knobbe's case is a legitimate concern.  NVIDIA is willing to drop Topics 11, 12, and 13 if ACS and Knobbe represent that no attorney from Knobbe will testify regarding anything responsive to these topics and no fact or expert witness will rely on or testify about anything a Knobbe attorney said that is responsive to these topics.  NVIDIA reserves the right to ask the prosecuting attorneys questions responsive to Topics 9, 11, and 12.

Best regards,
Peter

Peter Nelson
Associate

T  +1 202 799 4092
M  +1 301 346 1357
peter.nelson@us.dlapiper.com

**DLA Piper LLP (US)**
dlapiper.com

---

**From:** Stephen Larson <Stephen.Larson@knobbe.com>
**Sent:** Friday, August 12, 2022 3:24 PM
**To:** Williamson, Carrie <Carrie.Williamson@us.dlapiper.com>; Cheryl Burgess <Cheryl.Burgess@knobbe.com>
**Cc:** NVIDIA-ACS-DLA <NVIDIA-ACS-DLA@us.dlapiper.com>; Karen Elizabeth Keller <kkeller@shawkeller.com>; ACSService <ACSService@knobbe.com>; Nathan R. Hoeschen - Shaw Keller LLP (nhoeschen@shawkeller.com) <nhoeschen@shawkeller.com>
**Subject:** RE: ACS v. NV - Deposition Scheduling and Format

 EXTERNAL MESSAGE

Counsel,

As noted below, we provided deposition dates for Mr. Cannon and Mr. Smemoe that were contingent on the parties resolving any outstanding Knobbe 30(b)(6) issues.  Please let us know today if NVIDIA agrees to our proposal.  If not, we will need to reschedule those depositions to mutually agreeable dates after the 30(b)(6) issues are resolved.

Best,
Steve

---

**From:** Stephen Larson
**Sent:** Wednesday, August 10, 2022 7:24 PM
**To:** Williamson, Carrie <Carrie.Williamson@us.dlapiper.com>; Cheryl Burgess <Cheryl.Burgess@knobbe.com>
**Cc:** NVIDIA-ACS-DLA <NVIDIA-ACS-DLA@us.dlapiper.com>; Karen Elizabeth Keller <kkeller@shawkeller.com>; ACSService <ACSService@knobbe.com>; Nathan R. Hoeschen - Shaw Keller LLP (nhoeschen@shawkeller.com) <nhoeschen@shawkeller.com>
**Subject:** RE: ACS v. NV - Deposition Scheduling and Format

Carrie,

Thank you for your email and for meeting and conferring this morning.  Unfortunately, NVIDIA has not changed its position since the last meet and confer.  NVIDIA has proposed no narrowing and instead suggested it *might* consider some narrowing if Knobbe and ACS stipulate in advance to not provide certain testimony at trial.  As I explained in my previous email, and at the meet and confer today, we cannot make such a commitment because, among other things, we do not know what NVIDIA will be arguing at trial.

For example, as I explained during the call, NVIDIA has acknowledged it is pursuing an inequitable conduct defense but *refuses* to explain that potential defense.  We do not think the Court will appreciate such tactics.  Below, NVIDIA states that its goal is to avoid surprise, but it appears to us that NVIDIA's goal is the opposite.  Specifically, NVIDIA seeks to surprise the Knobbe witnesses (including with an undisclosed inequitable conduct theory) by refusing to identify the specific subjects NVIDIA will pursue and instead forcing Knobbe to prepare witnesses on vast amounts of materials.

Despite NVIDIA's refusal to narrow or compromise, we have continued to examine NVIDIA's subpoena to determine whether we can agree to some of the topics, at least as narrowed.  Below is a compromise to which we could agree if it would resolve all outstanding issues concerning NVIDIA's subpoena.  Please let us know if NVIDIA agrees.

1. Subject to and without waiving its objections, Knobbe Martens would be willing to designate a witness on topics 1, 2 (narrowed to the Asserted Patent),  4, 7, 8 (narrowed to the Asserted Patent), and 10 (narrowed to the Asserted Patent) if the parties reach an overall agreement on the topics.

2. <u>Regarding Topics 12</u>: NVIDIA already has the opportunity to probe the prosecuting attorneys' technical knowledge at their individual depositions (though Knobbe fails to see the relevance

of that topic and reserves all rights to object to such questioning at the deposition).  NVIDIA has identified no basis to require Knobbe Martens to prepare and designate one or more attorneys to testify regarding the technical knowledge of <u>all</u> its attorneys.

3. <u>Regarding Topics 5 & 6</u>: NVIDIA already has the opportunity to ask the prosecuting attorneys about facts relating to inventorship, conception, and reduction to practice within their personal knowledge (though, again, Knobbe reserves the right to object to such questioning at the deposition).  Knobbe objects to NVIDIA's attempt to seek opinions and testimony from Knobbe Martens regarding legal issues or potential issues in the case.

4. <u>Regarding Topic 11 & 13</u>: Knobbe and ACS are not presently intending to testify at trial regarding statements between them.  That should resolve Topics 11 and 13.  NVIDIA's demand that Knobbe and ACS agree in advance to exclude testimony regardless of the circumstances or issues at that time—such as new defenses (e.g., inequitable conduct)—is not reasonable or workable.

Please let us know if NVIDIA agrees to the above proposal.

Best,
Steve

**From:** Williamson, Carrie <Carrie.Williamson@us.dlapiper.com>
**Sent:** Tuesday, August 9, 2022 10:50 PM
**To:** Stephen Larson <Stephen.Larson@knobbe.com>; Cheryl Burgess <Cheryl.Burgess@knobbe.com>
**Cc:** NVIDIA-ACS-DLA <NVIDIA-ACS-DLA@us.dlapiper.com>; Karen Elizabeth Keller <kkeller@shawkeller.com>; ACSService <ACSService@knobbe.com>; Nathan R. Hoeschen - Shaw Keller LLP (nhoeschen@shawkeller.com) <nhoeschen@shawkeller.com>
**Subject:** RE: ACS v. NV - Deposition Scheduling and Format

Counsel,

As we repeatedly stated, the scope of the many of NVIDIA's topics are driven by positions that ACS has taken in the case.  It is highly concerning that Knobbe, as counsel for ACS, is taking broad positions regarding patents ***other than*** the Asserted Patent in this litigation; yet, as demonstrated by your email below, Knobbe seeks to prevent NVIDIA from engaging in discovery regarding those broad positions regarding those other patents and seeks to limit NVIDIA's discovery to only the Asserted Patent.  Knobbe's behavior is fundamentally prejudicial and unfair to NVIDIA.  We remain willing to discuss limiting scope of topics with Knobbe to seek to avoid burdening the Court; however, we will not agree to limit discovery solely to the Asserted Patent, given ACS and Knobbe's positions in the litigation, is a non-starter.

NVIDIA repeatedly explained the potential for significant narrowing once Knobbe Martens and ACS stipulated that:

(1) ACS would not call anyone from Knobbe Martens as a witness; and
(2) no ACS fact or expert witness would rely upon any statement or information obtained from Knobbe Martens.

Without this stipulation, NVIDIA must assume ACS intends to rely upon or call Knobbe Martens at trial—and, thus, must depose Knobbe Martens to obtain the full scope of potential testimony at trial.  Should ACS agree to stipulate to (1) and (2) above, we can discuss significant narrowing of the subpoena.

Knobbe Marten's request to narrow the topics to just the Asserted Patent is consistent with ACS' position taken in the litigation.  As explained during the meet and confer, the Asserted Patent is part of a family and Knobbe Martens prosecuted the entire family.  Furthermore, ACS has injected this family in the case as ACS is relying on patents in the family for priority and conception and reduction to practice.  Thus, at a bare minimum, NVIDIA is entitled to ask questions about the prosecution of the entire family.

Furthermore, as also explained during the meet and confer, Dean Dauger, a named inventor on the Asserted Patent, submitted a declaration to the USPTO saying that he allegedly developed the technology behind the Asserted Patent after he "began to explore ways to improve MGT"—a product for which ACS filed patents with Knobbe Martens as prosecution counsel.  Declaration of Dean Dauger, IPR2021-00020, Ex. 2030, at ¶¶ 22–23 (Feb. 9, 2021); *see also* U.S. Pat. Nos. 8,849,889, 8,402,080; U.S. Prov. Pat. App. No. 60/720,442.  NVIDIA, thus, also seeks information related to the patents filed for MGT, which was the precursor to the alleged technology behind the Asserted Patent.

NVIDIA is pursuing discovery as to potential inventorship defenses.  As ACS' counsel admitted on the call, it is aware that NVIDIA is and has been seeking information related to possible inventorship defenses.  As stated during the meet and confer NVIDIA's requests to Knobbe are related to NVIDIA's investigation of a possible inventorship defenses.

One of the main goals of this subpoena is <u>to prevent ACS from surprising NVIDIA</u>—not the other way around—by calling or relying upon information from Knobbe Martens at trial.

Based on your current responses, we understand that Knobbe is refusing to make a witness available for deposition.  If Knobbe is changing its position, please let us know.  Otherwise, we will need to seek Court intervention.

Regards,
Carrie

---

**From:** Stephen Larson <Stephen.Larson@knobbe.com>
**Sent:** Thursday, July 28, 2022 12:39 PM
**To:** Cheryl Burgess <Cheryl.Burgess@knobbe.com>; Williamson, Carrie <Carrie.Williamson@us.dlapiper.com>
**Cc:** NVIDIA-ACS-DLA <NVIDIA-ACS-DLA@us.dlapiper.com>; Karen Elizabeth Keller <kkeller@shawkeller.com>; ACSService <ACSService@knobbe.com>; Nathan R. Hoeschen - Shaw Keller LLP (nhoeschen@shawkeller.com) <nhoeschen@shawkeller.com>
**Subject:** RE: ACS v. NV - Deposition Scheduling and Format

 EXTERNAL MESSAGE

Counsel,

I write regarding the meet and confer concerning NVIDIA's subpoena to Knobbe Martens.

I had hoped the parties could meet and confer in good faith to narrow and resolve disputes.  For example, I suggested Knobbe may be able to compromise and provide some testimony on NIVIDIA's topic nos. 1, 2 (if narrowed to the Asserted Patent),  7, and 10 (if limited to the Asserted Patent) if the parties could reach an overall agreement.

NVIDIA repeatedly refused to narrow its topics.  At best, NVIDIA offered a vague proposal that, if (1) Knobbe and ACS agreed that neither would testify at trial regarding statements from Knobbe to ACS then (2) NVIDIA may drop topics 11 and 13.  NVIDIA suggested that such a representation might also narrow other topics.  But NVIDIA refused to identify those topics or otherwise commit to any such narrowing.

When asked to explain the relevance of its topics, NVIDIA repeatedly provided answers that were vague and failed to justify the broad scope of discovery NVIDIA seeks.  During the call, it became clear that many of NVIDIA's topics are directed to defenses/theories that NVIDIA has not yet asserted, articulated and/or disclosed in the litigation.

For example, NVIDIA stated it is pursuing "inequitable conduct," but refused to articulate its allegations even at a high level.  Knobbe Martens objects to NVIDIA's attempt to force Knobbe Martens and its attorneys to testify and provide broad and burdensome discovery regarding an inequitable conduct defense that is not in the case and as to which Knobbe Martens has no notice.

Indeed, it appears that NVIDIA's strategy is to force Knobbe Martens to prepare witnesses on exceedingly broad topics (such as the date when Knobbe Martens first learned of every prior art reference during the prosecution of every related patent), so NVIDIA can avoid disclosing its theories and surprise Knobbe Martens' witnesses at their depositions.  That is improper.

NVIDIA also suggested it is exploring "inventorship" of the various patents and that NVIDIA is interested in "no prior art" statements by ACS.  I repeatedly asked NVIDIA to explain its allegations so the parties could meet and confer to narrow the scope of the topics.  NVIDIA repeatedly provided vague answers that failed to justify its broad topics.

I explained and maintained Knobbe Martens' objections to each topic.  For example, I explained that (1) Topics 2, 3, 8, 9, 10 seek burdensome discovery regarding patents other than the Asserted Patent; (2) Topics 5 and 6 seek legal testimony on issues and contentions in this case (e.g., inventorship, conception and reduction to practice, and obviousness) and (2) Topics 11 and 12 demand that Knobbe explain its knowledge of technical concepts (such as cluster computing systems and FFTW).  NVIDIA failed to articulate any valid justification for pursuing discovery regarding these or other topics from Knobbe Martens.

Despite NVIDIA's refusals to narrow or compromise, I said Knobbe Martens would examine the

topics again and determine whether we can agree to some of the topics if narrowed.  I ask that NVIDIA do the same.

Thanks,
Steve

**Stephen Larson**
Partner
949-721-5301 **Direct**
**Knobbe Martens**

---

**From:** Cheryl Burgess <Cheryl.Burgess@knobbe.com>
**Sent:** Tuesday, July 26, 2022 8:53 AM
**To:** Williamson, Carrie <Carrie.Williamson@us.dlapiper.com>
**Cc:** NVIDIA-ACS-DLA <NVIDIA-ACS-DLA@us.dlapiper.com>; Karen Elizabeth Keller <kkeller@shawkeller.com>; ACSService <ACSService@knobbe.com>; Nathan R. Hoeschen - Shaw Keller LLP (nhoeschen@shawkeller.com) <nhoeschen@shawkeller.com>; Stephen Larson <Stephen.Larson@knobbe.com>
**Subject:** RE: ACS v. NV - Deposition Scheduling and Format

Carrie,

We objected to NVIDIA's 30(b)(6) subpoena and stated our willingness to meet and confer.  If NVIDIA is still pursuing a 30(b)(6) deposition, please let us know when NVIDIA is available to meet and confer this week.  To the extent Knobbe does provide 30(b)(6) testimony, we expect that Mr. Cannon and/or Mr. Smemoe will be the designated witnesses.  Thus, our proposed dates are contingent on the parties, or if necessary the court, resolving any outstanding Knobbe 30(b)(6) issues by those dates.

Best,
Cheryl

**Cheryl Burgess**
Partner
949-721-2935 **Direct**
**Knobbe Martens**

---

**From:** Williamson, Carrie <Carrie.Williamson@us.dlapiper.com>
**Sent:** Monday, July 25, 2022 9:53 PM
**To:** Cheryl Burgess <Cheryl.Burgess@knobbe.com>; ACSService <ACSService@knobbe.com>; Karen Elizabeth Keller <kkeller@shawkeller.com>; Nathan R. Hoeschen - Shaw Keller LLP (nhoeschen@shawkeller.com) <nhoeschen@shawkeller.com>
**Cc:** NVIDIA-ACS-DLA <NVIDIA-ACS-DLA@us.dlapiper.com>
**Subject:** RE: ACS v. NV - Deposition Scheduling and Format

Cheryl,

The dates for Mr. Cannon and Mr. Smemoe work (August 16 and 18 respectively).  Will one also be Knobbe's designated witness?

Please let us know when Mr. Bancroft and Dr. Singh will be available for deposition.

Thanks,
Carrie

---

**From:** Cheryl.Burgess <Cheryl.Burgess@knobbe.com>
**Sent:** Tuesday, July 19, 2022 10:13 AM
**To:** Williamson, Carrie <Carrie.Williamson@us.dlapiper.com>; ACSService <ACSService@knobbe.com>; Karen Elizabeth Keller <kkeller@shawkeller.com>; Nathan R. Hoeschen - Shaw Keller LLP (nhoeschen@shawkeller.com) <nhoeschen@shawkeller.com>
**Cc:** NVIDIA-ACS-DLA <NVIDIA-ACS-DLA@us.dlapiper.com>
**Subject:** RE: ACS v. NV - Deposition Scheduling and Format

⚠ EXTERNAL MESSAGE

Carrie,

We will have to get back to you regarding video conferencing for depositions.

We can confirm that Mr. Cannon is available on August 16 and Mr. Smemoe is available on August 18.  We are still investigating dates for the remaining individuals and will follow-up once we have additional availability dates.

Best,
Cheryl

**Cheryl Burgess**
Partner

949-721-2935 **Direct**
**Knobbe Martens**

---

**From:** Williamson, Carrie <Carrie.Williamson@us.dlapiper.com>
**Sent:** Monday, July 18, 2022 2:20 PM
**To:** ACSService <ACSService@knobbe.com>; Karen Elizabeth Keller <kkeller@shawkeller.com>; Nathan R. Hoeschen - Shaw Keller LLP (nhoeschen@shawkeller.com) <nhoeschen@shawkeller.com>
**Cc:** NVIDIA-ACS-DLA <NVIDIA-ACS-DLA@us.dlapiper.com>
**Subject:** ACS v. NV - Deposition Scheduling and Format

Cheryl,

We are working on dates for the NVIDIA witnesses.  Please confirm that your

understanding is that depositions in the case (whether it is of ACS, NVIDIA or third parties) will take place via video conferencing.

When will ACS be in a position to provide dates for Mr. Tannenbaum, Dr. Dauger, Ms. Tannenbaum, ACS' 30(b)(6) witnesses, Knobbe, Mr. Smemoe, Mr. Cannon, Dr. Singh, and Mr. Bancroft?

Thanks,
Carrie

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com. Thank you.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com. Thank you.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com. Thank you.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com. Thank you.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com. Thank you.

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com. Thank you.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com. Thank you.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com. Thank you.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not

the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com. Thank you.

# EXHIBIT 4

| | |
|---|---|
| **From:** | O"Byrne, Stephanie |
| **To:** | Cheryl Burgess; Williamson, Carrie |
| **Cc:** | Lit ZTANNL.017L; NVIDIA-ACS-DLA |
| **Subject:** | RE: ACS v. NVIDIA: ▮▮▮ deposition follow-up |
| **Date:** | Friday, August 26, 2022 2:55:30 PM |
| **Attachments:** | image001.png |

Hi Cheryl,

We agree to table the ▮▮▮ issue as you propose below.

Best,
Stephanie

## Stephanie E. O'Byrne
Of Counsel

T   +1 302 468 5645
F   +1 302 691 4745
stephanie.obyrne@us.dlapiper.com



---

**From:** Cheryl Burgess <Cheryl.Burgess@knobbe.com>
**Sent:** Friday, August 26, 2022 5:34 PM
**To:** Williamson, Carrie <Carrie.Williamson@us.dlapiper.com>
**Cc:** Lit ZTANNL.017L <LitZTANNL.017L@knobbe.com>; NVIDIA-ACS-DLA <nvidia-acs-dla@dlapiper.com>
**Subject:** ACS v. NVIDIA: ▮▮▮ deposition follow-up

⚠ EXTERNAL MESSAGE

Carrie,

As we noted at the conclusion of the deposition yesterday, ▮▮▮▮▮▮ could not speak to certain key aspects of NVIDIA's financial spreadsheets, which clearly fall within the scope of his designation as NVIDIA's 30(b)(6) witness on several relevant topics.  As we discussed, we are willing to work with NVIDIA to find a way for NVIDIA to provide ACS with this information.

==To avoid the unnecessary presentation of issues to the Court at this time, ACS proposes that the parties agree that ACS need not file a letter with the Court today to preserve its rights to pursue this discovery.==  We propose scheduling a meet and confer for early next week to discuss a resolution.  If the parties are at an impasse at that time, the parties will then proceed with a joint letter to the Court.  Please confirm that NVIDIA agrees with this approach and will not assert that this discovery

dispute is waived or otherwise untimely if brought to the court within a reasonable time after the parties' meet and confer.

Best,
Cheryl

**Cheryl Burgess**
Partner
Cheryl.Burgess@knobbe.com
949-721-2935 **Direct**

**Knobbe Martens**
2040 Main St., 14th Fl.
Irvine, CA 92614
www.knobbe.com/cheryl-burgess

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com. Thank you.

# EXHIBIT 5

| | |
|---|---|
| **From:** | O'Byrne, Stephanie |
| **To:** | Cheryl Burgess; ACSService |
| **Cc:** | NVIDIA-ACS-DLA; Karen Elizabeth Keller ; Nathan R. Hoeschen; Emily DiBenedetto; O'Byrne, Stephanie |
| **Subject:** | RE: NVIDIA discovery letter 8.26.22 |
| **Date:** | Friday, August 26, 2022 2:43:40 PM |
| **Attachments:** | image004.png |
| | image001.png |

Hi Cheryl,

Thanks for your email.  The financials dispute, upon which the parties declared an impasse, is broader than the tax return request.  ==While we appreciate that ACS will investigate whether it will produce tax returns, this does not resolve the overarching questions regarding ACS' production of other financial documents,== ████████████████████████  ==Thus we will submit this disputed issue as written ("motion to compel ACS to produce financial documents").==  Of course, should ACS change its position and/or the parties otherwise resolve the issue prior to briefing, we can table it.

Best,
Stephanie

## Stephanie E. O'Byrne
Of Counsel

T   +1 302 468 5645
F   +1 302 691 4745
stephanie.obyrne@us.dlapiper.com



---

**From:** Cheryl Burgess <Cheryl.Burgess@knobbe.com>
**Sent:** Friday, August 26, 2022 5:24 PM
**To:** O'Byrne, Stephanie <Stephanie.OByrne@us.dlapiper.com>; ACSService <ACSService@knobbe.com>
**Cc:** NVIDIA-ACS-DLA <NVIDIA-ACS-DLA@us.dlapiper.com>; Karen Elizabeth Keller <kkeller@shawkeller.com>; Nathan R. Hoeschen <nhoeschen@shawkeller.com>; Emily DiBenedetto <emily.dibenedetto@shawkeller.com>; Stamper, Julian <Julian.Stamper@us.dlapiper.com>
**Subject:** RE: NVIDIA discovery letter 8.26.22

  ⚠ EXTERNAL MESSAGE

Stephanie,

We received your proposed letter to the Court.  ==As noted during the call today, this is the first time ACS has understood NVIDIA to be requesting ACS's tax returns and that NVIDIA interprets such tax==

returns as falling within its requests for financial records.  We are investigating this issue with our client. To avoid the unnecessary presentation of issues to the Court, ACS proposes that the parties approach the second issue identified in the letter in the same manner we proposed approaching the issues identified in ACS's proposed letter to the Court, as described in my recent email to Clayton and Peter.

Specifically, in light of ACS's commitment to investigate the production of ACS's tax returns, which are the subject of the second issue identified in your proposed letter to the Court, ACS proposes following up on this issue during the meet and confer next Friday.  If the parties are at an impasse at that time, the parties will then proceed with a joint letter to the Court on financial documents (i.e., ACS's tax returns).

If NVIDIA agrees with this approach, ACS agrees not to assert that this discovery dispute is waived or otherwise untimely if brought to the court within a reasonable time after the parties' pending meet and confer.

Best,
Cheryl

**Cheryl Burgess**
Partner

**949-721-2935** Direct

**Knobbe Martens**

---

**From:** O'Byrne, Stephanie <Stephanie.OByrne@us.dlapiper.com>
**Sent:** Friday, August 26, 2022 12:50 PM
**To:** ACSService <ACSService@knobbe.com>
**Cc:** NVIDIA-ACS-DLA <NVIDIA-ACS-DLA@us.dlapiper.com>; Karen Elizabeth Keller <kkeller@shawkeller.com>; Nathan R. Hoeschen <nhoeschen@shawkeller.com>; Emily DiBenedetto <emily.dibenedetto@shawkeller.com>; Stamper, Julian <Julian.Stamper@us.dlapiper.com>
**Subject:** NVIDIA discovery letter 8.26.22

Counsel,

Attached is the discovery letter requesting a conference on the two NVIDIA issues certified today.  I plan to get on file close to 6 EST.

I will revert separately on the other letter, looping in Steve.

Regards,
Stephanie

**Stephanie E. O'Byrne**
Of Counsel

T   +1 302 468 5645

F   +1 302 691 4745
stephanie.obyrne@us.dlapiper.com



The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com. Thank you.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com. Thank you.

# EXHIBIT 6

| From: | Ben Shiroma |
|-------|-------------|
| To: | Williamson, Carrie; NVIDIA-ACS-DLA |
| Cc: | ACSService; Cheryl Burgess; Karen Keller |
| Subject: | RE: ACS v. NVIDIA |
| Date: | Saturday, September 3, 2022 12:03:25 AM |
| Attachments: | 2022-09-02 ACS privilege log RE 2022-08-23 clawed back documents.pdf |
| | 2022-09-02 ACS redaction privilege log RE 2022-08-23 clawed back documents.pdf |

Carrie,

ACS continues to disagree with NVIDIA's attempt to impose unilateral, unreasonable deadlines without sufficient notice or discussion. NVIDIA waited until August 30 to propose a 2-day deadline for ACS's privilege log of clawed-back documents. ACS provided its counter proposal on August 31, and NVIDIA then waited until today to propose a revised same-day deadline for certain clawed-back documents. Your comparison to Ms. Burgess's March 29, 2022 email is inapt. Ms. Burgess proposed a 10-day turn around for NVIDIA's privilege log for withheld documents 3-days in advance of NVIDIA's production, ultimately giving NVIDIA at least 13 days' notice to complete its privilege log. This is in stark contrast to NVIDIA's 2-day and same-day demands. Nonetheless, ACS has labored to complete its privilege logs of the documents clawed back on August 23, 2022 within NVIDIA's unilateral deadline despite several other contemporaneous deadlines and depositions in this case. ACS will produce privilege logs for the documents clawed back on August 25, 2022 on Monday, September 5, 2022, despite it being a holiday. Please confirm that NVIDIA has complied with the Protective Order with respect to the documents clawed back in ACS's 2 August 25, 2022 letters.

ACS is not proposing that the parties exchange the larger privilege logs covering emails and other documents on September 9, 2022. ACS is diligently working on these logs and will be better able to estimate when such an exchange can take place on September 9, 2022.

Best,
Ben

**Ben Shiroma**
Associate
Ben.Shiroma@knobbe.com
310-601-1269 **Direct**

**Knobbe Martens**
1925 Century Park East, Suite 600
Los Angeles, CA 90067
https://www.knobbe.com/attorneys/ben-k-shiroma

---

**From:** Williamson, Carrie <Carrie.Williamson@us.dlapiper.com>
**Sent:** Friday, September 2, 2022 9:59 AM
**To:** Ben Shiroma <Ben.Shiroma@knobbe.com>; NVIDIA-ACS-DLA <NVIDIA-ACS-DLA@us.dlapiper.com>
**Cc:** ACSService <ACSService@knobbe.com>; Cheryl Burgess <Cheryl.Burgess@knobbe.com>; Karen Keller <kkeller@shawkeller.com>
**Subject:** RE: ACS v. NVIDIA

Ben,

Given that the clawed-back documents are subject to motion practice and ACS has still not provided a privilege log, ACS' delay in providing the basis for its privileged documents is prejudicial to NVIDIA's preparation of its letter brief to the court.  Furthermore, ACS previously demanded that NVIDIA provide a privilege log for clawed back documents within 10 days.  *See* 3/29/2022 Burgess email.  We understand that ACS will be providing its privilege log for the documents it clawed back on August 23 today.  We further understand ACS will be providing its privilege log for the documents clawed back on August 25 by no later than September 5.

With respect to the remainder of the privilege log, we understand you are proposing to exchange the rest of the updated privilege logs by September 9.  Is that correct?

Regards,
Carrie

---

**From:** Ben Shiroma <Ben.Shiroma@knobbe.com>
**Sent:** Wednesday, August 31, 2022 11:40 AM
**To:** Williamson, Carrie <Carrie.Williamson@us.dlapiper.com>; NVIDIA-ACS-DLA <NVIDIA-ACS-DLA@us.dlapiper.com>
**Cc:** ACSService <ACSService@knobbe.com>; Cheryl Burgess <Cheryl.Burgess@knobbe.com>; Karen Keller <kkeller@shawkeller.com>
**Subject:** RE: ACS v. NVIDIA

⚠ EXTERNAL MESSAGE

Carrie,

Thank you for confirming NVIDIA's compliance with the Protective Order with respect to the clawed back privileged documents identified in ACS's August 23, 2022 letter.

The parties have not yet agreed on a specific date for a mutual exchange of supplemental privilege logs for email and other documents, which your email acknowledges.  ACS has diligently been working to complete this log, and had intended to include the clawed back privileged documents along with the privileged email documents.  ACS continues to diligently work on this log and will be better able to estimate when this exchange can take place on September 9, 2022.

We understand that NVIDIA is now unilaterally seeking an expedited privilege log for just the clawed back privileged documents by tomorrow.  Although ACS is willing to work with NVIDIA to expedite the production of a separate privilege log for the clawed back privileged documents, ACS will not be able to provide the log by NVIDIA's unilateral deadline of tomorrow.  ACS can agree to produce a separate privilege log covering the clawed back privileged documents by September 5, 2022 despite it being a holiday.

Best,
Ben

**Ben Shiroma**
Associate

Ben.Shiroma@knobbe.com
310-601-1269 Direct

**Knobbe Martens**
1925 Century Park East, Suite 600
Los Angeles, CA 90067
https://www.knobbe.com/attorneys/ben-k-shiroma

---

**From:** Williamson, Carrie <Carrie.Williamson@us.dlapiper.com>
**Sent:** Tuesday, August 30, 2022 6:07 PM
**To:** Ben Shiroma <Ben.Shiroma@knobbe.com>; NVIDIA-ACS-DLA <NVIDIA-ACS-DLA@us.dlapiper.com>
**Cc:** ACSService <ACSService@knobbe.com>; Cheryl Burgess <Cheryl.Burgess@knobbe.com>; Karen Keller <kkeller@shawkeller.com>
**Subject:** RE: ACS v. NVIDIA

Counsel,

In response to your August 23, 2022 letter clawing back privileged documents, we confirm we have taken reasonable steps to permanently delete all electronic copies of such documents from electronic records and to destroy all paper copies.

We have not yet received a privilege log for any documents clawed back by ACS.  Please provide a privilege log for all documents clawed back by ACS based on privilege by end of day Thursday, September 1, as NVIDIA must submit its letter to the Court regarding the dispute on privileged documents on Tuesday, September 6.  Additionally, please let us know when ACS will be prepared to exchange full privilege logs.

Regards,
Carrie

---

**From:** Ben Shiroma <Ben.Shiroma@knobbe.com>
**Sent:** Tuesday, August 23, 2022 10:54 AM
**To:** Williamson, Carrie <Carrie.Williamson@us.dlapiper.com>; NVIDIA-ACS-DLA <NVIDIA-ACS-DLA@us.dlapiper.com>
**Cc:** ACSService <ACSService@knobbe.com>; Cheryl Burgess <Cheryl.Burgess@knobbe.com>; Karen Keller <kkeller@shawkeller.com>
**Subject:** ACS v. NVIDIA

⚠ EXTERNAL MESSAGE

Carrie,

Please see the attached correspondence from Cheryl Burgess.

Best,
Ben

**Ben Shiroma**
Associate

Ben.Shiroma@knobbe.com

310-601-1269 **Direct**

# Knobbe Martens

1925 Century Park East, Suite 600
Los Angeles, CA 90067
https://www.knobbe.com/attorneys/ben-k-shiroma

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com. Thank you.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com. Thank you.

# EXHIBIT 7

| | |
|---|---|
| **From:** | Williamson, Carrie |
| **To:** | ACSService; kkeller@shawkeller.com; Nate Hoeschen |
| **Cc:** | NVIDIA-ACS-DLA |
| **Subject:** | ACS v. NVIDIA - ACS"s clawed back documents |
| **Date:** | Monday, September 5, 2022 9:57:05 PM |

Counsel,

In response to your August 25, 2022 letters clawing back privileged documents, we confirm we have taken reasonable steps to permanently delete all electronic copies of such documents from electronic records and to destroy all paper copies.

Given that the clawed-back documents are subject to motion practice and ACS has still not provided a privilege log for the August 25 clawed back documents, ACS' delay in providing the basis for its privileged documents is prejudicial to NVIDIA's preparation of its letter brief to the court and NVIDIA will so note in its letter to the court tomorrow.

Regards,
Carrie

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com. Thank you.

# EXHIBIT 8

UNITED STATES PATENT AND TRADEMARK OFFICE

---

**BEFORE THE PATENT TRIAL AND APPEAL BOARD**

---

NVIDIA CORPORATION,
Petitioners,

v.

ADVANCED CLUSTER SYSTEMS, INC.
Patent Owner

---

Case No. IPR2020-01608
U.S. Patent 8,082,289
Case No. IPR2021-00019
U.S. Patent 10,333,768
Case No. IPR2021-00020
U.S. Patent 10,333,768
Case No. IPR2021-00075
U.S. Patent 8,140,612
Case No. IPR2021-00108
U.S. Patent 8,676,877

---

**DECLARATION OF JOHN BANCROFT**



Exhibit #

Bancroft 02

09/02/22 - MJ

-1-

NVIDIA Corp. v. Advanced Cluster Systems
IPR2021-00019
**Advanced Cluster Systems Ex. 2008**

NVIDIA-ACS-0224881

IPR2020-01608, IPR2021-00019, -00020, -00075, -00108
*NVIDIA v. Advanced Cluster Systems*

I, John Bancroft, hereby declare as follows:

1.       I am currently the Chief Executive Officer at the Queensland Cyber Infrastructure Foundation.  I have personal knowledge of the matters set forth herein, and, if I am called upon to testify, I could and would testify competently hereto.

2.       I have been asked by Advanced Cluster Systems ("ACS") to provide the following information regarding cluster-computing, or supercomputing, generally as well as the long-felt but unmet need for the solution provided by ACS's Supercomputing Engine Technology ("SET") product, the failure of others to meet that need, and scepticism of SET in the industry.

## **BACKGROUND**

3.       I have over fourteen years of experience with cluster-computing.

4.       Beginning in 2007 and continuing through 2013, I worked for the Science and Technology Facilities Council ("STFC").  The STFC is part of the United Kingdom Research and Innovation ("UKRI") and had a broad science portfolio, and works with the academic and industrial communities to share its expertise.  One of the STFC's main U.K. sites is Daresbury Laboratory.

5.       From March 2007 to February 2009, I was the Head of Business Development for the Computational Science & Engineering Department ("CSED") at Daresbury Laboratory.  CSED was the U.K.'s leading provider of expertise and facilities in supercomputing and high-performance computing.  I was responsible for

- 2 -

NVIDIA-ACS-0224882

IPR2020-01608, IPR2021-00019, -00020, -00075, -00108
*NVIDIA v. Advanced Cluster Systems*

effort needed to implement such traditional parallel-computing architectures. SET and SEM were the first products I encountered that could actually deliver on the capability.

31.     Thus, my personal observations and knowledge of the industry leads me to the conclusion that many others tried but failed to address the problems faced by the industry.

## INITIAL SCEPTICISM OF SET

32.     Upon learning of SET, I introduced the product to many experienced parallel programmers that wrote parallel code for research purposes and for commercial software vendors.  As I noted above, programming for the traditional parallel-computing architectures at the time was difficult and required substantial expertise.  These experts in parallel programming were highly sceptical of SET and could not believe it could work.  Their whole academic standing and/or livelihood hinged on their high level of expertise in writing parallel codes, as well as the perceived scarcity of this ability.   They were initially sceptical of a cluster-computing architecture that would enable a regular software programmer to write efficient, accurate parallel programs.

33.     Although I left Daresbury Laboratory in 2013, I still have occasional contact with ACS.  In appreciation for my efforts to introduce SET to industry, ACS offered me a seat on its Business Advisory Board sometime in 2008 or 2009.  I

- 12 -

IPR2020-01608, IPR2021-00019, -00020, -00075, -00108
*NVIDIA v. Advanced Cluster Systems*

accepted, and still serve on the Board.  In recognition of my service, ACS issued me

an option to buy a small number of shares in ACS.

I hereby declare that all statements made herein of my own knowledge are
true and that all statements made on information and belief are believed to be true;
and further that these statements were made with the knowledge that wilful false
statements and the like so made are punishable by fine or imprisonment, or both,
under Section 1001 of Title 18 of the United States Code and that such wilful false
statements may jeopardise the validity of the application or any patent issued
thereon.  I declare under penalty of perjury under the laws of the United States of
America that the foregoing is true and correct.

Date: 9th February 2021

John Bancroft

- 13 -

NVIDIA-ACS-0224893

# EXHIBIT 9

ADVANCED CLUSTER SYSTEMS, INC.

2011 EQUITY INCENTIVE PLAN
STOCK OPTION GRANT NOTICE



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

ADVANCED CLUSTER SYSTEMS, INC.

By: ZVI TANNENBAUM

Signature

Title: CEO

Date: 11/20/14

OPTIONHOLDER:

JOHN BANCROFT

Signature

Date: 21 NOVEMBER 2014

ATTACHMENTS:  Stock Option Agreement, 2011 Equity Incentive Plan and Notice of Exercise

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**ADVANCED CLUSTER SYSTEMS, INC.**

**BUSINESS ADVISORY BOARD CONSULTING AGREEMENT**



1

ACS_NVIDIA_079920



2

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

ACS_NVIDIA_079921

ADVANCED CLUSTER SYSTEMS, INC.          CONSULTANT

By: Zvi Tannenbaum                      Print Name: John Bancroft
Title: President

Address:  65 Enterprise
Aliso Viejo, CA 92656

Phone: _____
Fax: _____
Email: _____

3

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                          ACS_NVIDIA_079922

# EXHIBIT 10



Planet Depos®
We Make It *Happen*™

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

# Transcript of John Bancroft

**Date:** September 2, 2022
**Case:** Advanced Cluster Systems, Inc. -v- NVIDIA Corporation, et al.

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

**Page 1**

```
 1       IN THE UNITED STATES DISTRICT COURT
 2          FOR THE DISTRICT OF DELAWARE
 3
 4    - - - - - - - - - - - - - x
 5  ADVANCED CLUSTER          :
 6  SYSTEMS, INC.,            :
 7        Plaintiff,          :
 8     v.                     : Civil Action No.
 9  NVIDIA CORPORATION,       : 19-02032-CFC-CJB
10  NVIDIA SINGAPORE PTE.     :
11  LTD., AND NVIDIA          :
12  INTERNATIONAL, INC.,      :
13        Defendants.         :
14    - - - - - - - - - - - - - x
15      CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
16
17        Remote Videotaped Deposition of
18              JOHN BANCROFT
19          Friday, September 2, 2022
20               7:09 a.m. PST
21
22  Job No.: 462140
23  Pages: 1 - 197
24  Reported By: DEBRA BOLLMAN FARFAN, RDR-CRR-CRC
25          CA CSR No. 11648
```

**Page 2**

```
 1      Videoconference Deposition of JOHN
 2  BANCROFT, held remotely:
 3
 4
 5      Witness Location:
 6       U.K. Cheshire, West England
 7
 8
 9
10
11      Pursuant to subpoena, before Debra Bollman
12  Farfan, Registered Diplomate Reporter,
13  Registered Merit Reporter, Certified Realtime
14  Reporter, Certified Realtime Captioner, and
15  Certified Shorthand Reporter No. 11648, in and
16  for the State of California.
17
18
19
20
21
22
23
24
25
```

**Page 3**

```
 1          A P P E A R A N C E S
 2
 3    ON BEHALF OF THE PLAINTIFF ADVANCED CLUSTER
 4  SYSTEMS, INC.
 5        BY: Ben Shiroma, ESQUIRE
 6     KNOBBE, MARTENS, OLSON & BEAR, LLP
 7     2040 Main Street, 14th Floor
 8     Irvine, California 92614
 9     949-760-0404
10
11
12
13    ON BEHALF OF THE DEFENDANTS NVIDIA
14  CORPORATION, NVIDIA SINGAPORE PTE. LTD., AND
15  NVIDIA INTERNATIONAL, INC:
16        BY: Yakov Zolotorev, ESQUIRE
17           Peter F. Nelson, ESQUIRE
18     DLA PIPER LLP (US)
19     2000 University Avenue
20     East Palo Alto, California 94303
21     650-833-2000
22
23
24
25
```

**Page 4**

```
 1  A P P E A R A N C E S   C O N T I N U E D
 2
 3
 4    ON BEHALF OF THE WITNESS:
 5        BY:  Reynaldo Barcelo, ESQUIRE
 6     BARCELÓ, HARRISON & WALKER, LLP
 7     2901 West Coast Hwy
 8     Suite 200
 9     Newport Beach, CA 92663
10
11
12
13    ALSO PRESENT:
14    Manita Joseph,  Planet Depos VideoTech
15    Harold Rodriguez, Training Videographer
16    Enrique Casas, Planet Depos Videographer
17
18
19
20
21
22
23
24
25
```

---

**5**

1
2                    I N D E X
3   DEPONENT                                          PAGE
4   JOHN BANCROFT
5   EXAMINATION BY    MR. ZOLOTOREV                      8
6   EXAMINATION BY    MR. SHIROMA                      179
7
8
9            I N D E X  O F  E X H I B I T S
10       (EXHIBITS ARE ATTACHED TO THE TRANSCRIPT.)
11               DESCRIPTION                          PAGE
12  EXHIBIT 1      SUBPOENA                             15
13  EXHIBIT 2      DECLARATION OF JOHN BANCROFT         53
14  EXHIBIT 3      "STAR-P USER GUIDE"                 114
15  EXHIBIT 4      "POOCHMPI TOOLKIT FOR MATHEMATICA"  126
16                 ACS AND DAUGER RESEARCH
17  EXHIBIT 5      ACS_NVIDIA_040776 TO 777 EMAIL      162
18                 EXCHANGE
19
20
21            PREVIOUSLY MARKED EXHIBITS
22               DESCRIPTION                          PAGE
23  NONE
24  END OF EXHIBITS
25

---

**6**

1          P R O C E E D I N G S
2               * * * * *
3       THE VIDEOGRAPHER:  Here begins Disk
4   Number 1 in the videotaped deposition of John
5   Bancroft in the matter of Advanced Cluster
6   Systems, Inc., versus NVIDIA Corporation,
7   et al., in the United States District Court for
8   the District of Delaware; Case Number
9   19-02032-CFC-CJB.
10      Today's date is September 2nd, 2022.
11  The time on the video monitor is 7:09 a.m.
12  Pacific Standard Time.
13      The videographer today is Enrique Casas,
14  representing Planet Depos.  This video
15  deposition is taking place remotely.
16      Would counsel please voice identify
17  themselves and state whom they represent.
18      MR. ZOLOTOREV:  Yes.  This is Jake
19  Zolotorev of DLA Piper, representing the
20  defendants, NVIDIA, which are also the noticing
21  party for this deposition.  And with me is my
22  colleague, Peter Nelson, also of DLA Piper.
23      MR. BARCELO:  Reynaldo Barcelo from the
24  firm of Barcelo, Harrison & Walker, LLP, on
25  behalf of the witness, Mr. John Bancroft, who

---

**7**

1   is appearing here voluntarily.
2       And the reason he's here is because
3   NVIDIA has threatened to seek to preclude him
4   from testifying at trial unless he does testify
5   in this deposition, which is why he's here.
6       He's been identified in supplemental
7   initial disclosures, as far as we know, on
8   specific topics of knowledge; and we expect
9   this deposition to be limited to that topic and
10  any appropriate related areas.
11      MR. SHIROMA:  Ben Shiroma of Knobbe
12  Martens, representing Plaintiff, Advanced
13  Cluster Systems, Inc.
14      THE VIDEOGRAPHER:  The court reporter
15  today is Debra Bollman, representing Planet
16  Depos.
17      Would the reporter please swear in the
18  witness.
19        S T I P U L A T I O N S
20      THE REPORTER:  Will counsel please
21  stipulate that in lieu of formally swearing in
22  the witness, the reporter will instead ask the
23  witness to acknowledge that their testimony
24  will be true under the penalties of perjury,
25  that counsel will not object to the

---

**8**

1   admissibility of the transcript based on
2   proceeding remotely, and that the witness has
3   verified that he is, in fact, John Bancroft.
4       Do counsel stipulate?
5       MR. ZOLOTOREV:  So stipulated.
6       MR. BARCELO:  So stipulated by the
7   witness.
8       MR. SHIROMA:  Yes.
9
10  Whereupon,
11            JOHN BANCROFT
12      was called as a witness, was duly sworn
13  and testified under penalty of perjury as
14  follows:
15            EXAMINATION
16  BY MR. ZOLOTOREV:
17  Q.  Mr. Bancroft, can you please state your
18  name and address for the record.
19  **A.  Do you want my full name?**
20  Q.  Yes, sir.
21  **A.  So my full name is John Lindley**
22  **Bancroft.  And my address is The Saddlery,**
23  **Tilstone Paddocks, Tilstone Fearnall,**
24  **Tarporley, postal code CW69HU.  And that's in**
25  **Cheshire in the UK.**



153

1
2
3
4
5
6
7
8
9
10
11
12
13
14     MR. BARCELO:  Objection.  Form.
15     MR. SHIROMA:  Objection.  Form.
16     THE WITNESS:  No.
17 BY MR. ZOLOTOREV:
18
19
20
21     MR. BARCELO:  Objection.  Form.  Asked
22 and answered.
23     MR. SHIROMA:  Objection.  Form.
24 BY MR. ZOLOTOREV:
25     Q.  I'm sorry.  Your answer got garbled up

154

1 with all the objections.
2     A.  Sorry.
3     Q.  Can you repeat it, please.
4     A.  Can Rey and Ben repeat as well and then
5 I will?
6     MR. BARCELO:  I said, "objection.  Form.
7 Asked and answered."
8     MR. SHIROMA:  Objection.  Form.
9     THE WITNESS:  What did you say, Rey?
10 Objection form, what?
11     MR. BARCELO:  Asked and answered.
12     THE WITNESS:  Oh.  Right.
13 BY MR. ZOLOTOREV:
14
15
16
17
18     MR. BARCELO:  Same objections.
19     MR. SHIROMA:  Same objection.
20
21 BY MR. ZOLOTOREV:
22
23
24     MR. BARCELO:  Objection.  Form.
25     MR. SHIROMA:  Objection.  Form.

155

1
2
3
4
5
6
7
8
9
10     MR. BARCELO:  Objection.  Form.
11     MR. SHIROMA:  Objection.  Form.
12
13
14
15
16
17
18
19
20     MR. BARCELO:  Objection.  Form.  Calls
21 for a legal conclusion.
22     MR. SHIROMA:  Objection.  Form.
23
24
25

156

1 BY MR. ZOLOTOREV:
2
3
4
5
6     MR. BARCELO:  I find that argumentative,
7 and harassing and badgering the witness.  Given
8 it's almost 8:00 p.m. where the witness is
9 located, we really need to move along.  We're
10 running on fumes now.
11     MR. ZOLOTOREV:  If we can stop making
12 speaking objections on the record, we will move
13 along.
14     Madam court reporter, can we please have
15 the question back.
16     (Testimony read back as follows:
17
18
19
20
21
22
23
24
25

157

1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
2 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
3 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
4 ▮▮▮▮▮▮▮▮▮▮▮▮
5 ▮▮▮▮▮▮▮▮
6 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
7 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
8 ▮▮▮▮▮▮▮▮▮
9      Sorry, Rey.
10     MR. BARCELO:  I didn't say anything.
11 Mr. Shiroma did.
12     THE WITNESS:  Oh, sorry, Ben.
13     MR. BARCELO:  There's no question
14 pending.
15     MR. ZOLOTOREV:  That's correct.
16 BY MR. ZOLOTOREV:
17 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
19     MR. BARCELO:  Objection.  Form.
20     MR. SHIROMA:  Objection.  Form.
21 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
22 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
23 BY MR. ZOLOTOREV:
24 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
25 compensate you in any way for your attendance

158

1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
2      MR. BARCELO:  Objection.  Form.  And
3 I'll caution the witness not to reveal the
4 substance of any attorney-client privileged
5 communications.
6      MR. SHIROMA:  Objection.  Form.
7      THE WITNESS:  On advice of counsel -- is
8 it I decline to answer?  Is that what we say?
9 BY MR. ZOLOTOREV:
10  Q.  Sir, there was no instruction not to
11 answer from your counsel, at least as I
12 understand it.
13 ▮▮▮▮▮
14 ▮▮▮▮▮▮▮▮▮▮▮▮
15 ▮▮
16 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
17 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
18 ▮▮▮▮▮▮▮▮▮
19     MR. SHIROMA:  Objection.  Form.
20     MR. BARCELO:  Objection.  Form.
21 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
22 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
23 ▮▮▮▮▮▮▮▮▮▮▮▮
24 BY MR. ZOLOTOREV:
25  Q.  Paragraph 33 of your declaration?

159

1  A.  Yes.
2   Q.  You state that -- actually, let me back
3 up for a second.
4      Let me ask you this:  If ACS receives
5 any money from NVIDIA in this case, do you
6 expect to receive any remuneration of any kind?
7      MR. SHIROMA:  Objection.  Form.
8      MR. BARCELO:  Objection.  Caution the
9 witness not to reveal the substance of any
10 attorney-client privileged communications.
11     THE WITNESS:  I serve on the ACS's
12 business advisory board, as I've said in the
13 declaration, paragraph 33, as you pointed out
14 to it.  And I do have a small number of share
15 options that were granted to me for helping ACS
16 in that way on that board.  That does not
17 necessarily mean, of course, that I will
18 receive any money if NVIDIA and ACS exchange
19 funds.
20 BY MR. ZOLOTOREV:
21   Q.  Okay.  And so, as you state in
22 paragraph 33, ACS has issued you an option to
23 buy a number of shares in ACS, correct?
24   A.  Yes, as it says in the declaration, yes.
25

160

1 ▮▮▮▮▮▮▮▮▮▮▮▮▮
2      MR. SHIROMA:  Objection.  Form.
3 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
4 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
5 ▮▮▮▮▮▮▮▮
6 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
7 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
8 ▮▮▮▮▮▮
9      MR. BARCELO:  Objection.  Form.
10     MR. SHIROMA:  Objection.  Form.
11 ▮▮▮▮▮▮▮▮▮
12 ▮▮▮▮▮▮▮▮
13 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
14 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
15 ▮▮▮▮▮▮▮▮
16     MR. BARCELO:  Objection.  Form.
17     MR. SHIROMA:  Objection.  Form.
18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
21 ▮▮▮▮▮▮▮▮▮▮▮▮▮
22 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
23 ▮▮▮▮▮▮▮▮▮▮▮▮▮
24 ▮▮▮▮▮▮▮
25    ///



**161**

1   BY MR. ZOLOTOREV:

19       (Deposition Exhibit No. 5 was marked for
20  identification.)
21  BY MR. ZOLOTOREV:
22   Q.  Let's go ahead and mark Tab 27 as the
23  next exhibit.
24       Sir, we've placed in front of you what's
25  been marked as Exhibit 5.  Please take a look

**162**

1   at it, and let me know if you recognize
2   Exhibit 5 as an email exchange between yourself
3   and Mr. Zvi Tannenbaum of ACS.
4    **A.  Yep, that looks like an email exchange.**
5    Q.  And on the top email, the "From" line is
6   John Bancroft, followed by a Gmail address, do
7   you see that?
8    **A.  I do, yeah.**
9    Q.  Is that your Gmail address, sir?
10   **A.  Yes.**

14   **A.  Yes.**
15   Q.  You recognize that as Mr. Tannenbaum's
16  email address, correct?
17   **A.  Yes.**

20   **A. Yes.**

23       And it goes on from there, do you see
24  that?
25   **A.  Uh-huh.**

**163**

17       MR. BARCELO:  Objection.  Form.
18       MR. SHIROMA:  Objection.  Form.

25       ///

**164**

1   BY MR. ZOLOTOREV:

5        MR. SHIROMA:  Objection.  Form.  And
6   objection privilege to the extent this gets
7   into attorney-client privileged communications.
8        MR. BARCELO:  Right.  I'll caution the
9   witness not to reveal the substance of any
10  attorney-client privileged communications,
11  including, but not limited to attorney-client
12  communications themselves.  Attorney work
13  product and common interest privilege as
14  mentioned earlier.
15  BY MR. ZOLOTOREV:

18       MR. SHIROMA:  Objection.  Or same
19  objection.
20       MR. BARCELO:  Same objection and
21  cautions.
22       THE WITNESS:  Do you want to ask another
23  question?
24  BY MR. ZOLOTOREV:
25   Q.  There is a question pending, would you

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Transcript of John Bancroft

49 (193 to 196)

September 2, 2022

193

1  product to many experienced parallel
2  programmers that wrote parallel code for
3  research purposes, and for commercial software
4  vendors.
5      As I noted above, programming for the
6  traditional parallel-computing architectures at
7  the time, was difficult and required
8  substantial expertise. These experts in
9  parallel programming were highly skeptical of
10 SET, and could not believe it could work.
11 Their whole -- excuse me -- their whole
12 academic standing and/or livelihood hinged on
13 their high level of expertise in writing
14 parallel codes, as well as the perceived
15 scarcity of this ability. They were initially
16 skeptical of a cluster-computing architecture
17 that would enable a regular software programmer
18 to write efficient, accurate, parallel
19 programs.
20 Q. Is paragraph 32 accurate?
21 A. Yes.
22     MR. ZOLOTOREV: Object to form.
23 BY MR. SHIROMA:
24 Q. Is there anything in paragraph 32 that
25 you disagree with?

194

1      MR. ZOLOTOREV: Object to form.
2      THE WITNESS: There isn't, no.
3  BY MR. SHIROMA:
4  Q. And if we could turn to page 13 of the
5  document.
6  A. Okay.
7  Q. Mr. Bancroft, when you wrote this
8  declaration, did you declare that all the
9  statements you made are true?
10 A. To the best of my knowledge and memory,
11 yes.
12 Q. Thank you, Mr. Bancroft. I have no
13 further questions at this time. Pass the
14 witness, Mr. Zolotorev?
15     MR. ZOLOTOREV: Okay. I don't have any
16 further questions for the witness at this time.
17 As previously noted, there is a number of
18 disputes and it's our position that the
19 deposition is not completed at this time,
20 pending the resolution of those disputes.
21     With regard to my standing objection to
22 all of the questions that elicited the witness
23 to read in verbatim paragraphs of the
24 declaration, my objection stands and we will be
25 moving to strike that testimony as improper,

195

1  including because it's beyond the scope of the
2  questions that I asked the witness.
3      And so, with all of that, with all those
4  caveats, I have no further questions for the
5  witness at this time.
6      MR. BARCELO: I have a couple of
7  housekeeping items to note on the record first.
8      Not necessarily because of the
9  confidentiality relating to the parties to the
10 litigation, but the witness's personal
11 confidential information that was testified
12 about in this deposition, I will mark this
13 transcript as Confidential Under the Protective
14 Order pending further review for
15 confidentiality issues.
16     And then just a final comment regarding
17 the objections that defendant's counsel just
18 mentioned. Again, this is a voluntary
19 appearance by Mr. Bancroft, not subject to any
20 subpoena or any other compulsory type of
21 appearance, and therefore, all his testimony is
22 being proffered in a voluntary manner, and that
23 would include any statement that he may wish or
24 he did wish to make regarding his previous
25 declaration. And it was all done in accordance

196

1  with the oath that he agreed to at the
2  beginning of the deposition.
3      MR. SHIROMA: And just briefly for the
4  record, with respect to defense counsel's
5  statements on the record, ACS states its
6  disagreement.
7      And with respect to defense counsel's
8  standing objection to reading from the
9  declaration on to the record, ACS disagrees at
10 least because Mr. Bancroft was asked several
11 questions at length about his declaration, and
12 him reading it off the record is clearly within
13 the scope of those questions.
14     MR. ZOLOTOREV: Unless there is anything
15 else, Mr. Bancroft, thank you.
16     THE VIDEOGRAPHER: Stand by, I'll take
17 us off the record. This marks the end of the
18 deposition. We are going off the record at
19 12:47 p.m. Pacific Standard Time.
20     (Deposition concluded at 12:47 p.m.,
21 196)
22
23
24
25

Case 1:19-cv-02032-MN Document 233 Filed 09/27/22 Page 70 of 88 PageID #: 6671
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Transcript of John Bancroft
September 2, 2022

50 (197 to 200)

197

1
2       REPORTER'S CERTIFICATION OF CERTIFIED COPY
3
4       I, Debra Bollman Farfan, Registered Diplomate
5   Reporter, Certified Realtime Reporter, and C.S.R. No.
6   11648, in and for the State of California, do hereby
7   certify:
8       That prior to being examined, the witness
9   named in the foregoing deposition was by me duly sworn
10  to testify to the truth, the whole truth, and nothing
11  but the truth; That said deposition was taken down by
12  me in shorthand at the time and place therein named and
13  thereafter reduced to typewriting under my direction,
14  and the same is a true, correct, and complete
15  transcript of said proceedings;
16      I further certify that I am not interested in
17  the event of the action.  Witness my hand this 3rd day
18  of September, 2022.
19
20
21
22      _____.
23      Debra Bollman Farfan, CA CSR No. 11648
24      RDR, RMR, CRR, CRC
25

# EXHIBIT 11



*CONFIDENTIAL - ATTORNEYS' EYES ONLY*

# Transcript of Ariela Tannenbaum

**Date:** August 25, 2022
**Case:** Advanced Cluster Systems, Inc. -v- NVIDIA Corporation, et al.

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

**Page 1**

```
1            UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF DELAWARE

3   ADVANCED CLUSTER SYSTEMS,  )
    INC.,                      )
4                              )
         Plaintiff,    )  Case No.:
5                              )  19-02032-CFC-CJB
      v.                       )
6                              )
    NVIDIA CORPORATION,        )
7   NVIDIA SINGAPORE PTE.      )
    LTD, and NVIDIA            )
8   INTERNATIONAL, INC.,       )
                               )
9        Defendants.           )
    ---------------------------)
10

11

12

13        CONFIDENTIAL:  ATTORNEYS' EYES ONLY

14   VIDEOTAPED DEPOSITION OF ARIELA TANNENBAUM

15            CONDUCTED VIRTUALLY

16            August 25, 2022

17             9:12 a.m.

18

19

20

21

22        REPORTED BY:

23     Tammy Moon, CSR No. 13184, RMR, CRR

24     Appearing remotely from Carmichael,
       California
25
```

**Page 2**

```
1   REMOTE APPEARANCES:

2   FOR PLAINTIFF:

3   KNOBBE, MARTENS, OLSON & BEAR, LLP
    BY:  BEN K. SHIROMA, ESQ.
4   1925 Century Park East, Ste 600
    Los Angeles, California 90067
5   310.551.3450
    Ben.shiroma@knobbe.com
6

7   FOR DEFENDANT:

8   DLA PIPER
    BY:  MONICA DE LAZZARI, ESQ.
9   BY:  CLAYTON THOMPSON, ESQ.
    2000 University Ave.
10  East Palo Alto, California 94303
    650.833.2034
11  Monica.DeLazzari@us.dlapiper.com

12

13

14  ALSO PRESENT:  DANIEL LONG, THE VIDEOGRAPHER

15  MALCOLM COOKE, THE REMOTE TECHNICIAN

16

17

18

19

20

21

22

23

24

25
```

**Page 3**

```
1            INDEX TO EXAMINATION

2              ARIELA TANNENBAUM

3          Thursday, August 25, 2022

4       Tammy Moon CSR No. 13184, RPR, CRR

5       WITNESS:  ARIELA TANNENBAUM

6

7   EXAMINATION                           PAGE

8   MS. DE LAZZARI                         9

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**Page 4**

```
1            INDEX TO EXHIBITS

2              ARIELA TANNENBAUM

3          Thursday, August 25, 2022

4       Tammy Moon CSR No. 13184, RPR, CRR

5

6   MARKED        DESCRIPTION                PAGE

7   Exhibit 1    Notice of Deposition        13

8   Exhibit 2    LinkedIn profile            40

9   Exhibit 3    OC-ALA Winter 2018 newsletter  53

10  Exhibit 4    Edge International document  74

11  Exhibit 5    Bates-stamped pages         79

12               ACS_NVIDIA_027891 to

13               ACS_NVIDIA_027897

14  Exhibit 6    Bates-stamped pages         89

15               ACS_NVIDIA_090374 to

16               ACS_NVIDIA_090376

17  Exhibit 7    Subpoena                    91

18  Exhibit 8    Privilege Log               97

19  Exhibit 9    Bates-stamped pages         100

20               AT_NVIDIA_000001 to

21               AT_NVIDIA_000002

22  Exhibit 10   Bates-stamped pages         100

23               AT_NVIDIA_000003 to

24               AT_NVIDIA_000004

25
```

5

```
1                 INDEX TO EXHIBITS
2                 ARIELA TANNENBAUM
3            Thursday, August 25, 2022
4        Tammy Moon CSR No. 13184, RPR, CRR
5   Exhibit 11   Bates-stamped pages           100
6                AT_NVIDIA_000005 to
7                AT_NVIDIA_000006
8   Exhibit 12   Bates-stamped pages           100
9                AT_NVIDIA_000007 to
10               AT_NVIDIA_000008
11  Exhibit 13   Bates-stamped pages           100
12  Exhibit 14   US Patent 8,849,889           130
13  Exhibit 15   Application data sheet        138
14  Exhibit 16   US Patent 8,402,080           142
15  Exhibit 17   Decision on Petition          147
16  Exhibit 18   Bates-stamped pages           164
17               ACS_NVIDIA_015057 to ACS _NVIDIA_0
18               15050
19  Exhibit 19   Bates-stamped pages           167
20               ACS_NVIDIA_027599 to
21               ACS_NVIDIA_027618
22  Exhibit 20   Bates-stamped pages           169
23               ACS_NVIDIA_078208 to
24               ACS_NVIDIA_078210
25
```

7

```
1                 INDEX TO EXHIBITS
2                 ARIELA TANNENBAUM
3            Thursday, August 25, 2022
4        Tammy Moon CSR No. 13184, RPR, CRR
5   Exhibit 29   Article "Accounts Receivable,   219
6                Billable Hours, and Collections:
7                The End Game or a Starting Point
8                for Law Firm
9                Success?"
10  Exhibit 30   Bates-stamped pages            223
11               ACS_NVIDIA_085766 to
12               ACS_NVIDIA_085767
13
14
15          QUESTIONS INSTRUCTED NOT TO ANSWER
16                    PAGE      LINE
17                    93     24
18
19             INFORMATION REQUESTED
20                    PAGE      LINE
21
22
23
24
25
```

6

```
1                 INDEX TO EXHIBITS
2                 ARIELA TANNENBAUM
3            Thursday, August 25, 2022
4        Tammy Moon CSR No. 13184, RPR, CRR
5   Exhibit 21   Bates-stamped page            187
6                ACS_NVIDIA_079430
7   Exhibit 22   Bates-stamped pages           190
8                ACS_NVIDIA_088213 to
9                ACS_NVIDIA_088215
10  Exhibit 23   Bates-stamped page            200
11               ACS_NVIDIA_079149
12  Exhibit 24   Bates-stamped page            202
13               ACS_NVIDIA_079267
14  Exhibit 25   Bates-stamped page            204
15               ACS_NVIDIA_083471
16  Exhibit 26   Bates-stamped pages           212
17               ACS_NVIDIA_027356 to
18               ACS_NVIDIA_027386
19  Exhibit 27   Article "Understanding Your Firm's   217
20               Real Financial Condition"
21  Exhibit 28   Article "The Erosion of the        218
22               Billable Hour or the Dings"
23
24
25
```

8

```
1        Thursday, August 25, 2022, 9:12 a.m.
2        THE VIDEOGRAPHER:  Here begins Media File
3   No. 1 in the videotaped deposition of Ariela
4   Tannenbaum in the matter of Advanced Cluster
5   Systems, Inc., v. NVIDIA Corporations et al., in
6   the United States District Court, for the District
7   of Delaware, Case No. 19:02032-CFC-CJV.
8        Today's date is August 25th, 2022.  The
9   time on the video monitor is 9:12 a.m.
10       The videographer today is Daniel Long,
11  representing Planet Depos.  This video deposition
12  is taking place via Zoom.
13       Would counsel please voice identify
14  themselves and state whom they represent.
15       MS. DE LAZZARI:  Monica De Lazzari with
16  DLA Piper for the NVIDIA defendants.  And joining
17  me today is my co-counsel Clayton Thompson.
18       MR. SHIROMA:  Hello.  My name is Ben
19  Shiroma of Knobbe Martens, on behalf of Advanced
20  Cluster Systems, Inc., and I'll be representing
21  Ms. Tannenbaum in today's deposition.
22       THE VIDEOGRAPHER:  The court reporter
23  today is Tammy Moon, representing Planet Depos.
24       Would the reporter please swear in the
25  witness.
```

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Transcript of Ariela Tannenbaum

August 25, 2022

3 (9 to 12)

9

1         ARIELA TANNENBAUM,
2   called as a witness, having been duly sworn,
3         testified as follows:
4   THE WITNESS:  I do.
5   EXAMINATION BY MS. DE LAZZARI, COUNSEL FOR NVIDIA
6         CORPORATION, ET AL.:
7         MS. DE LAZZARI:
8   Q.    Good morning, Ms. Tannenbaum.  My name is
9   Monica De Lazzari, and I'm with the law firm DLA
10  Piper, representing the NVIDIA defendants in this
11  action.
12        Could you please state your name for the
13  record.
14  A.    Ariela Tannenbaum.
15  Q.    Where do you currently reside?
16  A.    Newport Coast, California.
17  Q.    Could you please provide your complete
18  address.
19  A.    86 Sidney Bay Drive, Newport Coast,
20  California.
21  Q.    And sitting here today, where are you
22  currently located?
23  A.    In Knobbe Martens' building in Irvine --
24  Irvine, California.
25  Q.    Is anyone in the room currently with you?

10

1   A.    Ben Shiroma.
2   Q.    And Mr. Shiroma is on camera?
3   A.    Yes.
4   Q.    Do you have anything in front of you?
5   A.    A cup of coffee and my glasses.
6   Q.    You don't have any papers in front of you?
7   A.    No.  Just --
8         (Simultaneous colloquy.)
9   Q.    No notes in front of you?
10  A.    No.
11  Q.    And do you have a computer in front of
12  you?
13  A.    No -- well, this.
14  Q.    So it's just a camera in front of you and
15  a monitor?
16  A.    Yes.
17  Q.    Is anything else open on the monitor?
18  A.    This thing that is getting ready to show
19  me exhibits, I suppose, or documents.
20  Q.    So there's a web browser with the exhibit
21  share open in front of you?
22  A.    Right.
23  Q.    Do you have a cell phone?
24  A.    Not with me.
25  Q.    Where is your cell phone?

11

1   A.    In another room.
2   Q.    Do you have any methods of communicating
3   with others electronically during this deposition?
4   A.    No, I don't.
5   Q.    Ms. Tannenbaum, are you currently on any
6   medication, under the influence of drugs or
7   alcohol, or is there any reason that you would be
8   unable to testify truthfully and to the best of
9   your ability today?
10  A.    No.
11  Q.    Have you ever been deposed before?
12  A.    No.
13  Q.    Have you previously been involved in any
14  litigation?
15  A.    No.
16  Q.    So I'm going to go over a few ground rules
17  for today.  So I ask that you answer all questions
18  verbally.  We have a court reporter here today,
19  and she cannot transcribe any head nodding or
20  shaking, so please answer every question verbally.
21        You have been doing a great job of this so
22  far, but please speak slowly enough that the court
23  reporter is able to transcribe everything you say
24  accurately.
25  A.    Okay.

12

1   Q.    And given that there may be a lag with the
2   video, please wait until I complete my question
3   before answering.  I will wait until you finish
4   speaking until I ask the next question, and it is
5   important that we do not accidentally speak over
6   each other.
7         Since this deposition is taking place via
8   video streaming, if there are any lags or if you
9   would like a question repeated, please let me
10  know.
11        Also, please let me know if you would like
12  a break.  Otherwise, we will break roughly every
13  one hour.  If you would like a break, we will
14  finish with the question that we are on and then
15  proceed to take a break.
16        So, Ms. Tannenbaum, you understand that
17  you are under oath and subject to the penalty of
18  perjury, correct?
19  A.    Correct.
20  Q.    And do you understand that you cannot
21  discuss the substance of your testimony with your
22  attorney at the breaks?  Correct?
23  A.    Correct.
24  Q.    Okay.  I'm going to ask the court reporter
25  to mark Tab 1 as an exhibit.

CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Ariela Tannenbaum
August 25, 2022

4 (13 to 16)

---

13

1    THE REMOTE TECHNICIAN:  Stand by.
2    (Exhibit 1 was marked for
3    identification.)
4    MS. DE LAZZARI:
5    Q.    Ms. Tannenbaum, you understand that you
6    are appearing here in response to this deposition
7    notice, correct?
8  **A.    Correct.**
9    Q.    And I'm going to instruct you to look at
10   the case caption.  Do you see where it says
11   Advanced Cluster Systems, Inc.?
12 **A.    Yes.**
13   Q.    What is the business of Advanced Cluster
14   Systems, Inc.?
15 **A.    It's a high-tech business, and that's**
16 **really all I know of it.**
17   Q.    And what do you mean by "high-tech
18   business"?
19 **A.    Something with advanced technology that**
20 **can expedite processes.**
21   Q.    What do you mean by "advanced technology"?
22 **A.    That's all I know.  I really don't know**
23 **much more than that.  It's -- that's what I know.**
24   Q.    And what do you mean by "expedite
25   processes"?

---

14

1  **A.    Things that usually take certain amount of**
2  **time to run on the computer, I think that using**
3  **this technology can be done faster.**
4    Q.    If I refer to Advanced Cluster Systems,
5    Inc., today as ACS, will you understand what I
6    mean when I say "ACS"?
7  **A.    Yes.**
8    Q.    Has the business of ACS changed over time?
9    MR. SHIROMA: Objection. Form.
10   MS. DE LAZZARI:
11   Q.    So has the business of ACS changed over
12   time?
13 **A.    I don't know.**
14   Q.    You previously worked as the chief
15   financial officer for ACS.  Is that correct?
16   MR. SHIROMA:  Objection.  Form.
17   MS. DE LAZZARI:
18   Q.    So, Ms. Tannenbaum, you have previously
19   worked as the chief financial officer for ACS,
20   correct?
21 **A.    Yes.**
22   Q.    And you were the chief financial officer
23   of ACS from 2008 until 2000- -- or 2004 until
24   2018, correct?
25   MR. SHIROMA:  Objection.  Form.

---

15

1    MS. DE LAZZARI:
2    Q.    Do you understand my question?
3  **A.    Yes.**
4    Q.    Could you please respond to it.  I'll
5    repeat it again.
6    You were the chief financial officer of
7    ACS from 2004 to 2018, correct?
8  **A.    I just -- I'm sorry.  I have to pause for**
9  **a second.  I don't really know how this works.**
10 **When my attorney says "objection," am I still**
11 **supposed to answer the question?**
12   Q.    Yes.  You are unless your attorney objects
13   on the scope of privilege, in which case I will
14   ask if you will abide by your attorney's
15   objection.  But if an objection is to form, you
16   are still to answer.
17 **A.    Okay.**
18   (Simultaneous colloquy.)
19 **A.    Thank you.  I'm sorry.**
20   All right.  So can you please repeat the
21   question.
22   Q.    Yes.  Ms. Tannenbaum, you were the chief
23   financial officer of ACS from 2004 to 2018,
24   correct?
25 **A.    Correct.**

---

16

1
2
3
4
5
6
7
8
9  **A.    I'm sorry to interrupt again.  Can we put**
10 **the picture -- can we put your face on the screen?**
11 **I'm still seeing this document.  If that's the**
12 **intention, that's okay.  If -- it's easier to see**
13 **people.**
14   MR. SHIROMA:  Yeah.  I mean, if -- if no
15   one minds, we can put down the exhibit.
16   MS. DE LAZZARI:  We can pull it down for
17   now with the understanding it may come back up.
18   THE WITNESS:  Sure.
19
20
21
22
23
24
25

---

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Transcript of Ariela Tannenbaum

August 25, 2022

5 (17 to 20)



**Page 17**

19 Q.     Were you aware of any revenues, profits,
20 or losses of ACS during the time period that you
21 were CFO?
22      MR. SHIROMA:  Objection.  Form.
23      THE WITNESS:  Are you supposed to ask the
24 question again now or --
25      MS. DE LAZZARI:

**Page 18**

1 Q.     I will not repeat the question.
2      (Simultaneous colloquy.)
3 **A.     I don't know how this works, but I'm going**
4 **to get the hang of it.  I'm going to get the hang**
5 **of it.**
20 Q.     And you stepped down as chief financial
21 officer of ACS in 2018, correct?
22 A.     Correct.
23      MR. SHIROMA:  Objection.  Form.
24      MS. DE LAZZARI:
25 Q.     Now, you mentioned your husband earlier.

**Page 19**

1 Q.     Your husband's name is Zvi Tannenbaum, correct?
2 **A.     Correct.**
3 Q.     Would you prefer that I refer to him as
4 Mr. Tannenbaum or Zvi?
5 **A.     It doesn't matter.  Whatever you're**
6 **comfortable with.**
7 Q.     So your husband, Mr. Tannenbaum, is the
8 CEO of ACS.  Is that correct?
9      MR. SHIROMA:  Objection.  Form.
10      THE WITNESS:  Correct.  I assume he's the
11 CEO.  Really, I have not looked at the titles.
12      MS. DE LAZZARI:
13 Q.     So -- and just to clarify, if I refer to
14 him as Mr. Tannenbaum or as Zvi, you'll understand
15 that I'm talking about your husband, Zvi
16 Tannenbaum?
17 **A.     Absolutely, yes.**
18 Q.     So when did you meet Mr. Tannenbaum?
19 **A.     Forty-seven years ago.  It was in the air**
20 **force.**
21 Q.     Oh, wow.  So you met in the Israeli Air
22 Force?
23 **A.     Correct.**
24 Q.     How did you meet him?
25 **A.     He was in the technical side.  I was air**

**Page 20**

1 **traffic controller.  He supported me.**
2 Q.     Okay.  And what is -- what was
3 Mr. Tannenbaum's occupation when you met him from
4 the technical side?
5 **A.     He's a tech person.**
6 Q.     Do you recall what kind of tech person he
7 was?
8 **A.     No.  Excellent.**
9 Q.     And you mentioned that you were an air
10 traffic controller in the Israeli Air Force when
11 you met?
12 **A.     Correct.  Yes.**
13 Q.     So what positions at companies has Zvi
14 held since you have known him?
15      MR. SHIROMA:  Objection.  Form.
16      THE WITNESS:  So when we met -- when we
17 met, of course, he was in the air force with me.
18 That's when I met him.  Yeah.
19      MS. DE LAZZARI:
20 Q.     Do you recall what positions Zvi has held
21 since the Israeli Air Force?
22 **A.     No.  He worked for a short while for a**
23 **company, and then he started his own business.**
24 Q.     Do you recall what company he worked for
25 upon departing the Israeli Air Force?



45

1     MR. SHIROMA:  Yeah.  I'm just stating for
2  the record I'm going to walk over, check the
3  witness's setup, and then come back to my area.
4     MS. DE LAZZARI:  Okay.
5     (Brief pause.)
6     MR. SHIROMA:  I just -- for the record, I
7  closed out of the notification that -- from the
8  beginning that the meeting was being recorded, and
9  I also refreshed the witness's SharePoint on the
10  monitor.
11     MS. DE LAZZARI:  Thank you.
12  Q.    So just to clarify, Ms. Tannenbaum, are
13  you able to see the entirety of what is now marked
14  as Exhibit 2?
15  A.    Yes.
16  Q.    And just to clarify, the additional
17  positions that you listed that you held at PIMCO
18  are not listed on your LinkedIn profile.  Is that
19  correct?
20  A.    It's -- it's -- I don't even see the name
21  PIMCO here.  I see Allianz.  Oh, here we go.
22     It's the same -- as I said, it's the same
23  position.  I just moved up in titles.  It's not
24  like I was doing something different.  So, no, I
25  have not listed all of the different various

46

1  titles I had there.  That's correct.
2
3
4
5
6
7
8
9
10
11
12
13
14     MS. DE LAZZARI:
15  Q.    But just to clarify, during -- between --
16  or while you held your position at PIMCO, you also
17  were acting as CFO for ACS, correct?
18  A.    Yes.
19     MR. SHIROMA:  Objection.  Form.
20     THE WITNESS:  Yes.
21     MS. DE LAZZARI:
22
23
24
25     MR. SHIROMA:  Objection.  Form.

47

1  Mischaracterizes the witness's testimony.
2     THE WITNESS:  Am I supposed to answer
3  that?
4     MS. DE LAZZARI:
5  Q.    Yes.
6
7
8
9
10
11
12
13
14  Q.    Now, in January of 2017, you founded a
15  company called Advanced Financial Analytics, LLC.
16  Is that correct?
17  A.    Correct.
18  Q.    If I refer to Advanced Financial
19  Analytics, LLC, as AFA, will you understand what
20  I'm referring to?
21  A.    Yes.
22  Q.    Why did you create AFA?
23  A.    Because I -- I thought that law firms
24  could use best practices for the financial world
25  -- leading businesses to enhance their

48

1  profitability.
2     So I created this consulting firm, if you
3  will, to help law firms enhance their
4  profitability.
5  Q.    So what was AFA's business?
6  A.    Providing financial analytics to law firm
7  -- to law firms, showing them revenue leakage, if
8  you will, how they can help it.
9  Q.    Prior to January 2017, had you worked for
10  a law firm?
11  A.    No.
12  Q.    How did you come to found a business
13  directed at consulting for law firms in
14  January 2017?
15     MR. SHIROMA:  Objection.  Form.
16     THE WITNESS:  You know, I have children
17  that are lawyers.  And they said, "Mom, if you do
18  for law firms what you do for PIMCO, you'd be
19  doing great.  This is what law firms need."
20     And so I thought, "I'll just try that."
21  And it worked.
22     MS. DE LAZZARI:
23  Q.    How many of your children are lawyers?
24  A.    Two out of the three.
25  Q.    And what are their names?

CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Ariela Tannenbaum
August 25, 2022

18 (69 to 72)



**69**

22    MS. DE LAZZARI:  Could we please have
23  Exhibit 2 brought back up on the screen.
24    THE REMOTE TECHNICIAN:  Stand by.
25    MS. DE LAZZARI:

**70**

1  Q.    Now I would like to give the witness a
2  moment to glance over and to refresh.
3    This is your LinkedIn profile.  Is that
4  correct?
5  A.    Yeah.
6    MR. SHIROMA:  Objection.  Form.
7    MS. DE LAZZARI:
8  Q.    Does your LinkedIn -- strike that.
9    Your LinkedIn profile does not refer to
10 ACS, correct?
11 A.    Correct.
12 Q.    Why not?

**71**

24 Q.    Advanced Supercomputing Technologies does
25 not appear on your LinkedIn profile, does it?

**72**

1    MR. SHIROMA:  Objection.  Form.
2    THE WITNESS:  No, it's not.
3    MS. DE LAZZARI:
4  Q.    And why not?
5  A.    I thought I just explained that.
6  Because -- I thought I just explained it.



73

1   either.
2         MS. DE LAZZARI:
3   Q.    So I'm going to ask the court reporter to
4   please mark -- actually, strike that.
5   [redacted]
6   [redacted]
7   [redacted]
8   [redacted]
9   [redacted]
10  [redacted]
11  [redacted]
12  [redacted]
13  [redacted]
14  [redacted]
15  [redacted]
16  [redacted]
17  [redacted]
18  [redacted]
19  [redacted]
20  [redacted]
21  [redacted]
22  [redacted]
23  [redacted]
24  [redacted]
25  [redacted]

74

1         MS. DE LAZZARI:  Now I'm going to ask that
2   the court reporter please mark Tab 36 as the next
3   exhibit.
4         Mr. Shiroma, could you please let me know
5   when you see it on your end.
6         (Exhibit 4 was marked for
7   identification.)
8         MR. SHIROMA:  Thank you.  I'm refreshing
9   the box now.
10        (Brief pause.)
11        MR. SHIROMA:  Sorry.  I don't want to hold
12  you up, Monica.  This is a -- this is a two-page
13  document?  This will be fine.  I'll see it in the
14  box when I see it.
15        MS. DE LAZZARI:
16  Q.    So, Ms. Tannenbaum, you joined Edge
17  International in 2018.  Is that correct?
18        MR. SHIROMA:  Objection.  Form.
19        THE WITNESS:  That's correct.
20        MS. DE LAZZARI:
21  Q.    Edge International is a legal consulting
22  firm.  Is that correct?
23        MR. SHIROMA:  Objection.  Form.
24        THE WITNESS:  That is correct.
25        ///

75

1         MS. DE LAZZARI:
2   Q.    What is your -- what -- strike that.
3         Are you currently still involved in Edge
4   International?
5   A.    No, I'm not.
6   Q.    What was your role in Edge International?
7   A.    I joined because I needed exposure to the
8   legal industry, but I haven't had a chance to do
9   anything at Edge International.  And Edge
10  International is simply bunch of consultants that
11  provide consulting mainly to law firms.
12  Q.    Approximately how long were you affiliated
13  with Edge International?
14        MR. SHIROMA:  Objection.  Form.
15        THE WITNESS:  So from what it says here,
16  it's July 2018 until probably September of 2018,
17  when I received the offer from Wilson Sonsini and
18  I stopped my involvement with Edge International.
19        MS. DE LAZZARI:
20  Q.    So earlier you mentioned that you joined
21  Edge International for exposure to the legal
22  industry.  What do you mean by that?
23  A.    Well, I needed connections, right?  I
24  started a firm consulting law firms, but I needed
25  to know more about the industry.  I needed to have

76

1   more exposure.  I needed to have more connections.
2   And this was a -- this was a good platform for me
3   to join.  Very smart people.  And I enjoyed
4   communications with them.
5   Q.    And who were those communications with?
6   A.    With the folks at Edge International, the
7   other consultants.  One of them is Gerry Riskin,
8   who is the head of this organization, and others.
9   I can't even remember their names.  But they were
10  fantastic people.
11  Q.    Is Gerry Riskin an attorney?
12        MR. SHIROMA:  Objection.  Form.
13        THE WITNESS:  I think -- I don't know, but
14  I think he used to be.  And most others in that
15  organization used to be attorneys, as far as I
16  recall.
17        MS. DE LAZZARI:
18  Q.    Through your position at Edge
19  International, did you ever -- were you ever
20  introduced to Knobbe Martens, the law firm?
21        MR. SHIROMA:  Objection.  Form.
22        THE WITNESS:  No.  The answer is no.
23        MS. DE LAZZARI:
24  Q.    Through your position at Edge
25  International, were you ever introduced to anyone

149

1          MR. SHIROMA: Objection. Form.
2          MS. DE LAZZARI:
3     Q.   Is this your signature?
4     A.   Yes.
5     Q.   And it is dated May 30th, 2007. Is that
6   correct?
7     A.   Correct.
8     Q.   Could you please read the line starting
9   with "I believe."
10         MR. SHIROMA: Objection. Form.
11         THE WITNESS: "I believe I am an original,
12  first, and joint inventor of the subject matter
13  which is claimed and for which this patent is
14  sought on the invention entitled 'Clustered
15  Computer System,' the specification of which was
16  filed on September 26, 2006, as Application Serial
17  No. 11/527,319."
18         MS. DE LAZZARI:
19    Q.   When you --
20         (Simultaneous colloquy.)
21    Q.   When you signed this on May 30th, 2007,
22  did you believe that statement to be true?
23         MR. SHIROMA: Objection. Form.
24         THE WITNESS: Yes.
25         ///

150

1          MS. DE LAZZARI:
2     Q.   And could you please read the line -- I
3   guess paragraph starting with "I hereby declare."
4          MR. SHIROMA: Objection. Form.
5          THE WITNESS: "I hereby declare that all
6   statements made herein of my own knowledge are
7   true and that all statements made on information
8   and belief are believed to be true; and further,
9   that these statements were made with the knowledge
10  that willful false statements and the like so made
11  are punishable by fine or imprisonment or both
12  under Section 1001 of Title 18 of the United
13  States Code and that such willful false statements
14  may jeopardize the validity of the application or
15  any patent issued thereon."
16         MS. DE LAZZARI:
17    Q.   When you signed this on May 30th, 2007,
18  did you understand the penalty for making a false
19  statement before the U.S. PTO?
20    A.   Yes.
21         MR. SHIROMA: Objection. Form.
22         THE WITNESS: Yes.
23         MS. DE LAZZARI: Could I please ask the
24  court reporter to turn to page one of the PDF.
25    Q.   Now, Ms. Tannenbaum, Dean Dauger was not

151

1   listed as an inventor when the application that
2   issued as the '080 patent was filed, correct?
3          MR. SHIROMA: Objection. Form.
4          THE WITNESS: I think that -- his name did
5   not show on the prior page, so I guess he wasn't.
6          MS. DE LAZZARI: Could we please scroll to
7   page two -- actually, three. One more.
8          Excellent. Thank you.
9     Q.   So, Ms. Tannenbaum, Dean Dauger was later
10  added as an inventor to the '808 [sic] patent,
11  correct?
12         MR. SHIROMA: Objection. Form.
13         THE WITNESS: I guess. His name is there.
14  It must be. I don't know. I don't know.
15         MS. DE LAZZARI:
16    Q.   Actually, let me correct that. There was
17  an error in inventorship with respect to Dean
18  Dauger in this patent. Is that correct?
19         MR. SHIROMA: Objection. Form.
20         THE WITNESS: I don't know that.
21         MS. DE LAZZARI:
22    Q.   Do you recall why there was an error with
23  respect to Dean Dauger with inventorship of this
24  patent?
25         MR. SHIROMA: Objection. Form.

152

1          THE WITNESS: No, I don't.
2          MS. DE LAZZARI: I think we can break for
3   lunch now if we want to go off the record. Before
4   we go off the record, Ms. Tannenbaum, I just want
5   to remind you not to speak with your attorney
6   regarding the substance of your testimony today.
7          THE WITNESS: Okay.
8          THE VIDEOGRAPHER: Okay. We're now going
9   off the record. Time on the video monitor is
10  12:29 p.m.
11         (Lunch break taken.)
12         THE VIDEOGRAPHER: We're now back on the
13  record. Time on the video monitor is 1:16.
14         MS. DE LAZZARI:
15    Q.   Hi, Ms. Tannenbaum. Welcome back. I just
16  want to confirm that you did not discuss the
17  substance of your testimony today with your
18  attorney over the lunch break.
19    A.   That's correct.
20    Q.   And have you brought anything back in the
21  room with you? Any papers? Notebooks? Your cell
22  phone?
23    A.   No, I did not.
24    Q.   And is anyone other than Mr. Shiroma in
25  the room with you right now?



153

1  A.    No.
2  Q.    And you understand that you are still
3  under oath?
4  A.    I do.

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Transcript of Ariela Tannenbaum

40 (157 to 160)

August 25, 2022







225

1    (Brief pause.)
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24    MS. DE LAZZARI:  We can take the exhibit
25 down now.

226

1    So before we go off the -- or before I
2 pass the witness, I just want to maintain some
3 objections that NVIDIA has.
4    So we understand that ACS has clawed back
5 certain documentation that it has produced on the
6 basis of privilege and on relevance, which is a
7 disputed issue between the parties.  We had
8 planned to ask Ms. Tannenbaum about some of the
9 documents that ACS has clawed back.
10    Mr. Shiroma, is ACS maintaining its
11 position as to clawing back the documents
12 identified earlier this week?
13    MR. SHIROMA:  I'm sorry.  Just for
14 clarification, we're -- this is the documents
15 cited in a letter that was written by Ms. Burgess
16 -- Ms. Williamson earlier this week?
17    MS. DE LAZZARI:  That is correct.
18    MR. SHIROMA:  Okay.  And sorry.  What is
19 your question?
20    MS. DE LAZZARI:  My question is is ACS
21 maintaining its position as to clawing back those
22 documents?
23    MR. SHIROMA:  Yes, we are clawing them
24 back under the protective order.
25    MS. DE LAZZARI:  In that case, NVIDIA

227

1 reserves the right to continue this deposition
2 should the Court reserve this issue in NVIDIA's
3 favor, and so we would like to leave this
4 deposition open.
5    Mr. Shiroma, do you have any questions on
6 redirect?
7    MR. SHIROMA:  No redirect.  We would like
8 to state for the record that ACS disagrees with
9 NVIDIA's positions on the clawback issue and we
10 are clawing back under the protective order.
11    And we would like to reserve the usual
12 seven days for Ms. Tannenbaum to make any
13 modifications or corrections to the transcript
14 after she receives it.
15    MS. DE LAZZARI:  Okay.  One moment,
16 please.
17    In that case, we can go off the record.
18    THE VIDEOGRAPHER:  Now going off the
19 record.  This concludes the videotaped deposition.
20 The time on the video monitor is 3:07.
21    (The matter concluded, 3:07 p.m.)
22
23
24
25

228

1    DECLARATION UNDER PENALTY OF PERJURY
2
3    I, ARIELA TANNENBAUM, do hereby certify
4 under penalty of perjury that I have read the
5 foregoing transcript of my deposition taken on
6 August 25, 2022; that I have made such corrections
7 as appear noted on the Deposition Errata Page,
8 attached hereto, signed by me; that my testimony
9 as contained herein, as corrected, is true and
10 accurate.
11
12    Dated this     day of
13 2022.
14
15
16
17    ARIELA TANNENBAUM
18
19
20
21
22
23
24
25

**CONFIDENTIAL - ATTORNEYS' EYES ONLY**
Transcript of Ariela Tannenbaum      58 (229 to 232)
August 25, 2022

229

```
1        STATE OF CALIFORNIA        )
                                    )
2        COUNTY OF SACRAMENTO        )
3        I, TAMMY MOON, CSR No. 13184, Certified
4  Shorthand Reporter, do hereby certify:
5        That prior to being examined, the witness
6  in the foregoing proceedings was by me duly sworn
7  to testify to the truth, the whole truth, and
8  nothing but the truth;
9        That said proceedings were taken remotely
10 by me in shorthand and thereafter transcribed into
11 typewriting under my direction and supervision;
12       I further certify that I am neither
13 counsel for, nor related to, any party to said
14 proceedings, nor in any way interested in the
15 outcome thereof.
16       In witness whereof, I have hereunto
17 subscribed my name.
18       Dated:  27th of August, 2022
19
20       Tammy Moon
21
22       Tammy Moon, CSR No. 13184
23
24
25
```

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ADVANCED CLUSTER SYSTEMS, INC., | |
| Plaintiff, | Civil Action No. 1:19-cv-02032-MN-CJB |
| v. | |
| NVIDIA CORPORATION, NVIDIA SINGAPORE PTE. LTD., AND NVIDIA INTERNATIONAL, INC. | |
| Defendants. | |

**DECLARATION OF CHERYL T. BURGESS IN SUPPORT OF PLAINTIFF ADVANCED CLUSTER SYSTEMS, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF CLAWED BACK DOCUMENTS**

I, Cheryl T. Burgess, declare as follows:

1.      I am a partner with the law firm of Knobbe, Martens, Olson & Bear, LLP, counsel for Plaintiff Advanced Cluster Systems, Inc. ("ACS") in the above-captioned matter.  I have personal knowledge of the matters set forth herein and if I am called upon to testify, I could and would testify competently thereto.

2.      On August 26, 2022, I, Stephen Larson also of Knobbe Martens, and Ben Shiroma also of Knobbe Martens, met and conferred with counsel for NVIDIA Corp., NVIDIA International, Inc., and NVIDIA Singapore Pte. Ltd. (collectively, "NVIDIA").  Local counsel for both parties also attended.

3.      At the August 26, 2022 meet and confer, the Parties discussed the privileged documents claw back issue only as it related to communications with non-attorneys and third-parties.  Specifically, the discussion focused on communications with John Bancroft.  The parties

- 1 -

did not explicitly discuss correspondence with Ariela Tannenbaum or Carmine Napolitano during the meet and confer.

4.      At the August 26, 2022 meet and confer, the Parties did not discuss the contents of the clawed back documents.  Specifically, the Parties did not describe the contents of the clawed back documents as NVIDIA describes them in its letter brief.

5.      The August 26, 2022 meet and confer was the first time I understood that NVIDIA requested ACS's tax returns.  Specifically, I understood NVIDIA to request ACS's tax returns ███

███████████████████████████████████████████████████████████

███

6.      At the August 26, 2022 meet and confer ████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████   NVIDIA has since deposed ACS's corporate designees, and had the opportunity to inquire about whether additional financial documents exist.

7.      At the August 26, 2022 meet and confer, counsel for NVIDIA proposed that the Parties delay the filing of motions relating to ACS's issues also addressed that day in order to give the Parties more time to resolve the issues.  After the meet and confer, I sent an email to NVIDIA in accordance with this proposal.  I also proposed delaying the issue regarding ACS's production of tax returns, but NVIDIA declined.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 13, 2022 in Irvine, California.

_____
Cheryl T. Burgess

56285835